# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00617-CV

**Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Health Care Services Corporation, A Mutual Legal Reserve Company, Successor to Blue Cross and Blue Shield of Texas, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-04-001955, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a sales tax refund case in which Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross")[1] claimed refunds on grounds related to the tax code's sale-for-resale exemption, as applied to purchases of taxable items in connection with its performance of three federal government contracts. After the Comptroller of Public Accounts denied Blue Cross's refund claims, Blue Cross sued in district court and obtained a judgment awarding it approximately $4.8 million, plus interest. The Comptroller[2] appeals the judgment. In four issues, the Comptroller asserts that (1) the sale-for-

---

[1] Appellee Health Care Services Corporation is the successor by merger to Blue Cross. For clarity and consistency, we will use "Blue Cross" to refer to both entities.

[2] Because the interests of the Comptroller and Attorney General in the lawsuit and appeal align, *see* Tex. Tax Code Ann. § 112.053 (West 2008) (requiring both the Comptroller and the Attorney General to be named as defendants in tax refund suits under tax code chapter 112), we will use "Comptroller" as shorthand for the state government parties at both the administrative and judicial stages of this proceeding.

resale exemption does not, as a matter of law, apply to the Blue Cross purchases in question if the exemption is properly construed; (2) there is no evidence that any taxable items were "resold" to the federal government as a matter of state contract law; (3) there is no evidence to support the district court's determination that Blue Cross did not "double-recover" by getting reimbursed by the federal government for sales tax payments for which it also recovered a refund; and (4) the district court lacked jurisdiction over certain of Blue Cross's refund claims because Blue Cross failed to exhaust its administrative remedies. We will overrule these contentions and affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Blue Cross is a private insurance carrier that entered into separate contracts with the federal government to administer three different federal health insurance programs. The first two contracts were with the United States Department of Health and Human Services ("HHS") and concerned the administration of federal programs known as "Medicare Part A" and "Medicare Part B."[3] Blue Cross's duties under these two contracts included performing a variety of specific functions to carry out the purposes of the Medicare programs, including reviewing claims and, as appropriate, paying the claims out of the government's trust fund. In return, HHS paid Blue Cross's

---

[3] Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg (2000), commonly known as the Medicare program, is administered by the HHS. *See Schweiker v. McClure*, 456 U.S. 188, 189 (1982). "Part A" of the Medicare program provides insurance covering the cost of institutional health services, such as hospitals and nursing homes, for persons in financial need. *Id.* (describing Part A). "Part B" provides, for a monthly premium, supplemental benefits for additional medical needs, such as physician services and laboratory tests, for persons who are disabled or are 65 or older. *Id.* at 190 (describing Part B). Congress authorized HHS to contract with private insurance carriers to administer these programs on HHS's behalf. *Id.*

costs of claims administration. The third contract was with the United States Office of Personnel Management ("OPM") and involved the administration of the Federal Employees Health Benefit Program ("FEP").[4] This contract required Blue Cross to provide health care plans for federal employees, including enrollment, review of claims, and payment of benefits. In return, the OPM reimbursed Blue Cross for certain costs the company incurred in administering the FEP.

During the refund period—December 1, 1988 through December 31, 1998—Blue Cross purchased and paid sales tax on various taxable items in connection with its performance of the three contracts. The parties later stipulated to seven different categories of tangible personal property and taxable services that Blue Cross acquired:

- "Allowable"—purchases of tangible personal property (e.g., office supplies, furniture).

- "Capitalized Assets"—sales tax paid on the purchase of capital assets that Blue Cross "booked" as an asset, depreciated, and claimed as a depreciation expense to the federal government.

- "Utilities"—purchases of gas and electricity.

- "Leases" of office equipment and items such as telephones, postage machines, and water coolers.

- "Software/Software Maintenance," including purchases of software (i.e., licenses to use it) and maintenance of the software.

- "Taxable Services on Tangible Personal Property," such as repairs of computer equipment or purchases of a burglar or fire alarm service.

---

[4] The Federal Employees Health Benefits Act of 1959 established a health insurance program for federal employees and charged the Office of Personnel Management with negotiating contracts with qualifying private insurance carriers to offer health insurance to those federal employees who choose to enroll. *See* 5 U.S.C. § 8901-12 (2000).

- "Maintenance on Tangible Personal Property," including maintenance agreements for the service and maintenance of computer hardware and other tangible personal property.[5]

Blue Cross sought refunds from the Comptroller of the sales taxes Blue Cross had paid on these purchases. Blue Cross asserted that it was entitled to a refund because these purchases came within the tax code's sale-for-resale exemption from the sales and use tax. *See* Tex. Tax Code Ann. § 151.302 (West 2008) ("The sale for resale of a taxable item is exempted from the taxes imposed by this chapter."). The "resale," Blue Cross reasoned, occurred through the operation of title-passage provisions that each of the three contracts incorporated from the Federal Acquisition Regulations ("FAR"). *See* 48 C.F.R. § 1.101 (1997). The two Medicare contracts incorporated FAR 52.245-5(c):

    (1)    The Government shall retain title to all Government-furnished property.

    (2)    Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property.

*Id.* § 52.245-5(c). The FEP contract incorporated FAR 52.245-2(c), which includes the following language:

    (1)    The Government shall retain title to all Government-furnished property.

---

[5] The parties also stipulated to an eighth category of purchases Blue Cross made—"taxable services," including purchases of telephone services, laundry services, landscaping services and janitorial services. However, Blue Cross ultimately dropped its refund claims related to this category, and they are not at issue on appeal.

(2) All Government-furnished property and all property acquired by the Contractor, title to which vests in the Government under this paragraph (collectively referred to as Government property), are subject to the provisions of this clause. However, special tooling accountable to this contract is subject to the provisions of the Special Tooling clause and is not subject to the provisions of this clause. . . .

. . . .

(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the Contractor as a direct item of cost under this contract—

   (i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material; and

   (ii) Title to all other material *shall* pass to and vest in the Government upon—

      (A) Issuance of the material for use in contract performance;
      (B) Commencement of processing of the material or its use in contract performance; or
      (C) Reimbursement of the cost of the material by the Government, whichever occurs first.

*Id.* § 52.245-2(c). In turn, Blue Cross asserted, its purchases of the above tangible personal property and taxable services in performing the contracts constituted "sales" of "tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service," so as to come within the sale-for-resale exemption. *See* Tex. Tax Code Ann. §§ 151.006(a)(1) (defining "sale for resale"), .302 (creating sale-for-resale exemption).

5

The Comptroller disagreed and denied Blue Cross's refund claims. After unsuccessfully pursuing administrative appeals of the Comptroller's rulings, Blue Cross filed suit under section 112.151 of the tax code. *See id.* § 112.151 (West 2008).[6] Blue Cross obtained a partial summary judgment that it was entitled to the sale-for-resale exemption with respect to three categories of tangible personal property it had purchased in performing the contracts—"Allowable," "Utilities," and "Capitalized Assets"—and had billed to and been reimbursed by the federal government as direct costs.

The parties proceeded to a bench trial on the remaining issues, including whether Blue Cross was entitled to exemptions with respect to its purchases of the remaining categories of taxable items and the amount of the sales-tax refund to which it was entitled. Before trial, the Comptroller filed a motion for reconsideration of the district court's partial summary-judgment ruling. Also, the parties stipulated to a number of facts, including the refund amounts to which Blue Cross would be entitled for each category of its purchases if it proved that the category came within the exemption. Additionally, shortly before trial, the Comptroller filed a plea to the jurisdiction asserting that Blue Cross had failed to exhaust its administrative remedies with respect to two "new" refund claims she contended Blue Cross had raised in a trial brief.

Following trial, the district court denied the Comptroller's motion for reconsideration and her plea to the jurisdiction. It further held that Blue Cross was entitled to sales-tax exemptions for each category of its purchases and, based on the parties' stipulations, ordered that a total of

---

[6] The proceeding originated as two separate lawsuits, but were ultimately consolidated into a single cause.

6

$4,807,438.42 in sales tax Blue Cross paid on its purchases qualified for the exemptions. However, the district court found that to the extent Blue Cross had already been reimbursed by the federal government for these sales taxes, it would obtain an impermissible double-recovery. It permitted the parties to reopen the evidence to present proof as to the amount of sales taxes for which Blue Cross was entitled to a refund and had not "double-recovered" by being reimbursed by the federal government. After hearing this evidence, the district court found that no double-recovery would occur if Blue Cross was refunded the full amount of sales taxes the district court had previously determined, and rendered final judgment accordingly. It subsequently entered findings of fact and conclusions of law.

The Comptroller appeals.

## ANALYSIS

In her four issues, the Comptroller asserts that (1) the sale-for-resale exemption does not, as a matter of law, apply to the Blue Cross purchases in question if the exemption is properly construed; (2) there is no evidence that any taxable items were "resold," as a matter of state contract law, by being conveyed to the federal government through the FAR title-passage clauses; (3) there is no evidence to support the district court's findings that Blue Cross did not "double-recover" refunds for sales-tax payments for which it was reimbursed by the federal government; and (4) the district court erred in denying her plea to the jurisdiction as to Blue Cross's two "new" refund claims.

**Construction of sale-for-resale exemption**

The sale-for-resale exemption is an exception to the general rule that sales tax is imposed on each "sale" of a "taxable item" in the state. *See* Tex. Tax Code Ann. § 151.051(a). Specifically, the sale-for-resale exemption exempts a purchaser from paying sales tax on the purchase of "tangible personal property or a taxable service [that the purchaser purchased] for the purpose of reselling it . . . in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service." *See id.* § 151.106(a)(1). "Taxable items" are either "tangible personal property" or "taxable services." *See id.* § 151.010. "Tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner," including computer programs. *See id*. § 151.009. "Taxable services" include certain statutorily enumerated categories of services that the Comptroller has been delegated exclusive jurisdiction to interpret. *See id.* § 151.0101 (including, e.g., repairs of tangible personal property, maintenance for computer programs, and security services). As for "sale," the tax code defines "sale" or "purchase" as, among other things, "a transfer of title or possession of tangible personal property," "a lease . . . or rental of tangible personal property," or the performance of a "taxable service," when "done or performed for consideration." *See id.* § 151.005(1)-(3).

The district court made findings and conclusions that the items classified as "Leases" and the computer software included in "Software/Software Maintenance" were (along with the categories of items addressed by the partial summary judgment) "tangible personal property" used by Blue Cross to perform the three contracts on behalf of the federal government, that Blue Cross

8

purchased this property for the purpose of transferring its interests in the property to the federal government in the form or condition in which it was acquired, and that the property was conveyed to the federal government under the FAR clauses.[7] *See id.* §§ 151.006, .302. The district court further found that Blue Cross's "normal course of business" included performing its "core functions" under the contracts, and that these functions included purchasing the aforementioned tangible personal property and services for use in performing the contracts.

On appeal, the Comptroller does not deny that the purchases were made or that the FAR clauses passed title to the federal government of at least some categories of tangible personal property that Blue Cross acquired. Likewise, the Comptroller acknowledges that such passage of title under FAR clauses may constitute a "resale" of the tangible personal property within the meaning of the sale-for-resale exemption, such that the contractor would be entitled to the exemptions with respect to its purchase of the property. *See Day & Zimmermann, Inc. v. Calvert*, 519 S.W.2d 106, 108 (Tex. 1975); *Strayhorn v. Raytheon E-Systems, Inc.*, 101 S.W.3d 558, 570 (Tex. App.—Austin 2003, pet. denied). However, in her first issue, the Comptroller makes several assertions disputing whether the sale-for-resale exemption, if properly construed, applies to the particular purchases Blue Cross made.

---

[7] The district court determined that Blue Cross purchased the remaining categories of items—i.e., "Taxable Services on Tangible Personal Property" and "Maintenance on Tangible Personal Property"—for the benefit of the federal government and that the services and maintenance were performed on the federal government's property. *See* Tex. Tax Code Ann. §§ 151.309(1) (exemption for sale to federal government), .3111(a) (exemption for services on certain exempt personal property) (West 2008). These categories will be discussed in more detail below.

9

Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

However, with regard to a statute that an agency is charged with enforcing, we give serious consideration to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language, and this is particularly true when the statute involves complex subject matter within the agency's area of expertise. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008); *cf. Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (courts "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise or deal with a nontechnical question of law"). Further, statutory exemptions from taxation—like the sale-for-resale exemption—are "strictly construed" against the taxpayer because "they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). The burden of proof for showing the exemption

applies lies with the claimant. *See id.* An exemption must affirmatively appear in the statute, and all doubts are resolved in favor of the taxing authority. *See Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979). On the other hand, the concept that a tax exemption must be "strictly" construed "cannot be used as an excuse to stray from reasonableness." *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied). Likewise, "[a]lthough construction of exemption statutes is generally to be construed against the taxpayer, the overall scheme and intent of the legislation must not be overlooked." *Id.* at 161-62 (quoting *Idaho State Tax Comm'n v. Haener Bros., Inc.*, 828 P.2d 304, 307 (Idaho 1992)).

The Comptroller first argues that Blue Cross is not entitled to the sale-for-resale exemption with respect to any of the purchases because it "resold" only non-taxable administrative services to the federal government. Even if title to some taxable items passed to the federal government under FAR clauses, the Comptroller reasons, this would be only "incidental" to Blue Cross's "sale" of non-taxable services, but would not be a "resale" of the taxable items themselves. Relatedly, the Comptroller asserts that Blue Cross is not entitled to the exemption because the federal contracts do not require Blue Cross to purchase the taxable items, which she views as further supporting the notion that Blue Cross's purchase of these items were only "incidental" to its performance of non-taxable administrative services.

Accepting the Comptroller's characterizations that Blue Cross provided non-taxable administrative services to the federal government, it remains that Blue Cross undisputedly also conveyed tangible personal property to the federal government under FAR clauses. And, contrary to what the Comptroller seems to suggest, there is nothing in the sale-for-resale exemption stating

11

that Blue Cross must be considered to have done only one and not the other for purposes of the exemption. The legislature, again, made the exemption available where there is a sale of "tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it . . . in the normal course of business in the form or condition in which it [was] acquired or as an attachment to or integral part of other tangible personal property or taxable service." Tex. Tax Code Ann. § 151.006(a)(1). The legislature did not indicate that one who resells tangible personal property cannot also sell a non-taxable service, that the property being resold cannot also be used to provide the service, or that doing so somehow precludes the application of the sale-for-resale exemption if it otherwise would apply. *See In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002) ("courts should not insert words in a statute except to give effect to clear legislative intent"); *see also 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 687-89 (rejecting analogous attempt by Comptroller to apply "essence of the transaction" concept beyond narrow context in which it operates).

This conclusion finds further support in *Day & Zimmermann*, which involved a taxpayer that operated a munitions plant under contract with the federal government. Under the contract, the federal government paid the taxpayer both for each item it produced (tangible personal property) as well as for the taxpayer's costs of operating the plant (including administrative services). The supreme court held that the taxpayer's purchase of items charged as direct costs under the contract fell within the sale-for-resale exemption because they were "resold" by virtue of FAR title-passing language. *See* 519 S.W.2d at 108. There is no hint in *Day & Zimmermann* that the taxpayer's provision or "sale" of administrative services to the federal government would

12

somehow negate the applicability of the exemption with respect to the tangible personal property it resold. *See id.*[8]

We similarly conclude that nothing in the tax code indicates that Blue Cross must have been required to purchase the taxable items in order for a resale to occur. *See* Tex. Tax. Code Ann. § 151.006(a)(1). Even if it did, the district court made findings to support the conclusions that Blue Cross was, in fact, obligated to make the purchases at issue here, and the evidence supports those findings. Blue Cross's witness Al Trotter testified that Blue Cross was obligated and instructed to purchase "the required equipment and property to resell it to the federal government." He also testified that the Blue Cross "offer[ed] a turnkey operation" under the contracts.[9] Finally, he testified that Blue Cross's purchase of these taxable items for resale was a "core function under th[e] contract[s]." Thus, even if the resale exemption requires such an obligation, the evidence supports the district court's finding that Blue Cross's purchase of the taxable items was a "core function" of its contracts with the federal government.

The Comptroller next argues that the sale-for-resale exemption requires Blue Cross to be both a qualified "seller" (i.e., reseller) and a qualified "purchaser," and, the Comptroller asserts, Blue Cross is neither. Under the tax code, a "seller" is "a person engaged in the business of making

[8] In a related argument, the Comptroller asserts that the sale-for-resale exemption does not cover purchases of tangible personal property used in providing a non-taxable service, relying on *Davis-Kemp Tool Co. v. Bullock*, 584 S.W.2d 579 (Tex. Civ. App.—Beaumont 1979, no writ). In *Davis-Kemp*, the taxpayer provided non-taxable services to its customers using leased tools that were returned to the third-party lessor after the project was finished. The Beaumont court held that there was no resale under these facts and denied sale-for-resale exemption. *Id.* at 580. In contrast, the property used in performing the non-taxable services here was transferred to the federal government.

[9] "Turnkey" is defined as "provided in a state of readiness for immediate use." *Black's Law Dictionary* 1657 (9th ed. 2009).

13

sales of taxable items of a kind the receipts from the sale of which are included in the measure of the sales or use tax imposed by this chapter." *See id.* § 151.008(a). The Comptroller urges that Blue Cross does not meet this definition because it "does not sell taxable items. Blue Cross sells nontaxable[] administrative services." With respect to Blue Cross's status as a purchaser, the Comptroller similarly maintains that Blue Cross was not "in the business of selling, leasing, or renting taxable items" and could not issue a resale certificate. *See id.* § 151.054(b) ("A sale is exempt if the seller receives in good faith from a purchaser, who is in the business of selling, leasing, or renting taxable items, a resale certificate stating that the tangible personal property or service is acquired for the purpose of selling, leasing, or renting it in the regular course of business or for the purpose of transferring it as an integral part of a taxable service performed in the regular course of business."). These arguments are basically restatements of the Comptroller's assertions that Blue Cross does not come within the sale-for-resale exemption because it should be considered to sell only non-taxable administrative services, and we reject them for similar reasons. Blue Cross's "business" in this context is to perform its contracts with the federal government. *See Raytheon*, 101 S.W.3d at 567. To perform its contracts here, Blue Cross purchased taxable items and sold them to the federal government. *See Day & Zimmermann*, 519 S.W.2d at 110; *Raytheon*, 101 S.W.3d at 570. Thus, part of Blue Cross's business is to sell taxable items to the federal government. Consequently, Blue Cross comes within the definitions of "seller" and "purchaser" that the Comptroller emphasizes.[10]

---

[10] To the extent that the Comptroller is urging that Blue Cross is not a qualified purchaser because it did not provide resale certificates to its vendors, we note that the Comptroller has determined that section 151.054(b) does not require a resale certificate as a prerequisite to claiming

The Comptroller next argues that the sale-for-resale exemption does not apply to Blue Cross's purchases because the "resale" (whether viewed as the sale of non-taxable services or the sale of taxable items that are exempt) was not taxable.[11] It cites this Court's opinion in *East Texas Oxygen Co. v. State*, 681 S.W.2d 741, 745 (Tex. App.—Austin 1984, no writ), for the broad proposition that a taxpayer cannot qualify for the sale-for-resale exemption if the resale is ultimately non-taxable. We disagree that *East Texas* sweeps so broadly. We held that the sale-for-resale exemption did not apply to the transaction at issue—the sale of empty cylinders to a company who filled the cylinders with gas and then leased the cylinders and sold the gas contents to a buyer—because a statute "specifically dealing with containers . . . prevail[ed] over and constitute[ed] an exception to the general rule that 'sales for resale' are exempt from sales tax." *Id.* at 744-45 (analyzing earlier version of Tex. Tax Code Ann. § 151.322, which covered the sales of containers). In other words, we held that the resale exemption did not apply because the legislature intended to impose a tax on the particular transaction at issue—the sale of returnable containers. We did not hold, however, that the resale exemption did not apply because the subsequent sale was non-taxable. In the present case, there is no statute that specifically requires Blue Cross's particular transaction be taxed. Accordingly, *East Texas* does not inform our decision here.

---

the resale exemption. *See* Tex. Comptroller Public Accounts, Hearing No. 49,141 (Sept. 9, 2008) (finding that purchaser can claim resale exemption without providing resale certificate); Tex. Comptroller Public Accounts, Hearing No. 34,937 (Jan. 10, 1997) ("A purchaser . . . is neither insulated from the tax by issuing a certificate nor subjected to it by failing to issue a certificate. In the case of a purchaser, the facts, not the certificates, control.").

[11] *See* Tex. Tax Code Ann. § 151.302.

It is true that the legislature's general policy goals underlying the sale-for-resale exemption is in part to avoid the "pyramiding" of sales tax on successive transactions preceding sale to the ultimate purchaser. *Tyler Pipe Indus.*, 919 S.W.2d 157 at 161. Although that policy concern would not be implicated to the extent sales tax was not imposed on the ultimate sale or purchase, as here, we are nonetheless bound to apply the exemption the legislature has written. *See id.* at 162. As *Day & Zimmermann* illustrates, that the ultimate "resale" of taxable items comes within another exemption does not control whether the sale-for-resale exemption can apply to the reseller's purchase of those items. *See Day & Zimmermann*, 519 S.W.2d at 110 (noting that "the second sale between Day & Zimmermann and the Federal Government is *also* exempt under [the tax code]") (emphasis added); *Raytheon*, 101 S.W.3d at 570 (applying *Day & Zimmermann* analysis to sale-for-resale exemption for items resold to federal government); *see also Roark Amusement & Vending, L.P. v. Combs*, No. 03-10-00105-CV, 2011 WL 255535, at *3 (Tex. App.—Austin Jan. 26, 2011, no pet. h.) (mem. op.) (applying sale-for-resale exemption to purchase of plush toys used as part of taxable service even though taxable service was also exempt).

Finally, in the alternative, the Comptroller urges that even if the sale-for-resale exemption applies to Blue Cross's purchase of the tangible personal property addressed in the partial summary judgment, the remaining categories of taxable items—i.e., taxable services on tangible personal property, leases of office equipment, and software licenses—were not "resold" to the federal government because the FAR title-passing clauses apply only to tangible personal property, not intangibles and services. Regarding the taxable services, however, the Comptroller's assertion ignores the fact that the tax code does not require a transfer of title or possession for all

16

transactions under the sale-for-resale exemption. For services, a sale occurs upon performance of the taxable service. *See* Tex. Tax Code Ann. § 151.005(3). Here, the district court made a finding of fact, unchallenged by the Comptroller, that the taxable services and maintenance purchased by Blue Cross "were performed for the benefit of the federal government on tangible personal property owned by the federal government." Accordingly, Blue Cross "resold" the services and maintenance at issue in this case when it performed those services, regardless of the applicability of FAR title-passing provisions.

Regarding the remaining categories of items to which the Comptroller addresses this same argument—i.e., leases of office equipment and software licenses—the district court concluded that these items were tangible personal property, the rights to which were "transferred to the federal government under the FAR clauses." The Comptroller, although she says that she agreed to treat the other categories as tangible personal property so that the remaining categories would be considered intangibles, does not contest the court's conclusion that these items are tangible personal property, nor does she contest that the rights were transferred to the federal government. Rather, she simply asserts that title to these items could not have passed under FAR because FAR does not apply to intangibles. Assuming without deciding that the Comptroller is correct that the FAR title-passing provisions do not apply to intangibles, the leases and licenses here were found to be tangible personal property. Further, the district court found that Blue Cross transferred the rights in the leases

17

and licenses to the federal government.[12]  Therefore, under the tax code, a resale occurred because Blue Cross transferred title or possession to the federal government.

We overrule the Comptroller's first issue on appeal.

**Evidence of resales**

In her second issue, the Comptroller asserts that, apart from her contentions in her first issue, the district court erred in concluding that the sale-for-resale exemption applied to Blue Cross's purchases because (1) there were no fact findings that Blue Cross "sold" anything to the federal government; and (2) the evidence conclusively establishes that Blue Cross did not "resell" anything to the federal government because there is no evidence of a transfer for consideration.  *See* Tex. Tax Code Ann. § 151.005 (definition of sale).

Regarding the Comptroller's complaint about fact findings, the district court determined that Blue Cross "resold" the tangible personal property classified as "Allowable," "Capitalized Assets," and "Utilities," and was entitled to the sale-for-resale exemption with respect to its purchases of those items as a matter of law on summary judgment.  Findings of fact and conclusions of law are not appropriate in a matter determined by summary judgment.  *See Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994).

As for the remaining taxable items at issue—i.e., leases of office equipment, software licenses, services on tangible personal property, and maintenance agreements—we observe that

---

[12]  Even if we were to assume that the Comptroller has challenged the sufficiency of the evidence supporting the district court's finding that Blue Cross transferred its rights to the federal government, that challenge would fail because the record is replete with evidence that the rights to the leases and the licenses were transferred to the federal government.

18

whether a taxable item is "sold" or "resold" is ultimately a question of law turning on construction of the tax code, or a mixed question of law and fact turning on application of the tax code to the factual record. The district court here concluded as a matter of law that the leases of office equipment and software licenses were "tangible personal property" that Blue Cross "purchased" for the purpose of reselling to the federal government and then later "resold . . . to the federal government in the normal course of business," and, as a result, qualified for the tax code's sale-for-resale exemption. The district court also concluded as a matter of law that Blue Cross purchased taxable services and maintenance agreements that "were performed on property owned by the federal government and were therefore exempt from [tax code's] sales and use tax under [tax code sections] 151.3111(a) and 151.308(1)." These conclusions, in turn, were supported by the following fact findings: (1) Blue Cross purchased and paid sales tax on tangible personal property and services during the refund period, (2) Blue Cross charged or allocated the purchases of tangible personal property and services to its three contracts with the federal government, (3) Blue Cross's federal contracts included the FAR title-passing clauses, (4) Blue Cross's purchases of tangible personal property, including the leases of office equipment and software licenses, and services were "core functions" under its federal contracts, (5) Blue Cross used the tangible personal property, including the leases of office equipment and software licenses, to perform its three federal contracts, (6) the federal government instructed Blue Cross to purchase the services and maintenance agreements, (7) the services and maintenance agreements purchased by Blue Cross were performed on the government's tangible personal property, and (8) the rights in the leases of office equipment and software licenses that Blue Cross purchased were transferred to the federal government. The

19

district court thus met its rule-296 obligation to resolve the factual disputes in the case and set forth the legal principles it applied to those facts to resolve the case. *See* Tex. R. Civ. P. 296.

As for the Comptroller's assertions that there is no evidence of any transfer for consideration, she has the burden of demonstrating: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We must consider all of the evidence in the light most favorable to the fact finding and indulge every reasonable inference that would support it. *Id*. at 822. The Comptroller did not meet this burden here.

The tax code defines "sale" as follows:

> "Sale" . . . means any of the following when done or performed for consideration:
>
> (1)     a transfer of title or possession of tangible personal property;
> (2)     the exchange, barter, lease, or rental of tangible personal property;
> (3)     the performance of a taxable service [or] the charge for an extended warranty or service contract for the performance of a taxable service
> . . . .
>
> . . . .

Tex. Tax Code Ann. § 151.005. In *Day & Zimmermann*, the supreme court held that the transfer of title pursuant to the FAR title-passing provisions constituted a sale under a former version of section 151.005. *See Day & Zimmermann*, 519 S.W.2d at 110. Like the FAR provisions at issue in the present case, the contract at issue in *Day & Zimmermann* provided that title to property purchased under the contract passed to the federal government upon delivery of the property.

20

Similarly, in *Raytheon* we held that the taxpayer "resold" the items to the federal government by virtue of the FAR title-passing provisions included in the contract. Accordingly, under the tax code's definition of sale as interpreted by *Day & Zimmermann* and *Raytheon*, Blue Cross "resold" the taxable items if it purchased the tangible personal property and taxable services under the terms of contracts subject to FAR title-passing clauses. Also, under the tax code's definition of sale of services, Blue Cross "resold" the services at issue here if it performed those services. *See* Tex. Tax Code Ann. § 151.005(3).

Blue Cross and the Comptroller entered into the following stipulation of fact:

> "Blue Cross purchased tangible personal property and services during the Refund Period . . . that were directly and indirectly charged or allocated by Blue Cross to agencies of the federal government under three contracts containing title-passing Federal Acquisition Regulation clauses . . . ."

This stipulation alone is sufficient to support the district court's conclusions that Blue Cross sold the tangible personal property and taxable services at issue here to the federal government. Nevertheless, the record indicates that Blue Cross submitted the following additional evidence at summary judgment and at trial:

- Copies of the three federal contracts at issue in this case, including the FAR title-passing provisions.

- Documents showing the purchases of tangible personal property, including leases of office equipment and software licenses, and taxable services made in connection with the three federal contracts.

- Affidavit testimony by Trotter that—

21

(1)     Blue Cross's contracts with the government incorporated title passage clauses from FAR that specifically provided that title to all property purchased under the contracts passed to and vested in the federal government;

(2)     The federal contracts contained provisions directing Blue Cross to purchase material for the performance of the contracts; and

(3)     Blue Cross purchased tangible personal property and taxable services pursuant to the contracts.

- Trial testimony by Trotter that—

(1)     Blue Cross's refund claims covered property that was purchased and resold to the federal government under the three contracts;

(2)     Blue Cross purchased tangible personal property and services;

(3)     Blue Cross performed the services and maintenance on government property;

(4)     The contracts at issue included FAR clauses that required Blue Cross to purchase tangible personal property and taxable services and to resell those purchases to the federal government. Blue Cross made the purchases and resold the items to the federal government;

(5)     All of the property for which Blue Cross sought reimbursement under the three contracts was government property because title to the property passed to the government pursuant to the FAR provisions;

(6)     Blue Cross complies with the FAR provisions;

(7)     Everything purchased under the three contracts was treated as government property under the FAR provisions because it was used in the performance of the three contracts;

(8)     The software licenses were transferred to the federal government under the FAR provisions;

(9)     Leased equipment and software purchased under the contract was government property under the FAR provisions;

(10)     Everything that Blue Cross purchased was sold to the federal government;

(11)     Leases the Blue Cross purchased were sold to the federal government;

(12)     Blue Cross sold what it purchased to the federal government; and

(13)     Blue Cross purchased title to software and resold it to the federal government.

The Comptroller offered no contradictory evidence.

Considering this evidence in the light most favorable to the judgment and indulging every reasonable inference that would support the district court's finding, we conclude that a reasonable and fair-minded person could conclude that Blue Cross purchased the taxable items at issue here and subsequently sold those same items to the federal government when title passed pursuant to the FAR clauses in the contracts or when the services were performed. Accordingly, the evidence is legally sufficient to support the district court's finding here. We overrule the Comptroller's second issue.

**Double recovery**

The Comptroller's third issue concerns the limitation of sales-tax refund claims imposed by section 111.104(f) of the tax code, which provides that "[n]o taxes . . . may be refunded to a person who has collected the taxes from another person unless that person has refunded all the taxes . . . to the person from whom the taxes were collected." *See* Tex. Tax Code Ann. § 111.104(f) (West 2008). Emphasizing trial testimony to the effect that Blue Cross on occasion might have been reimbursed under its contracts for sales taxes it paid on the taxable items in question, the Comptroller asserts that Blue Cross failed to present legally sufficient evidence that any sales tax

23

payments to which it was held entitled to be refunded did not include or double-recover payments

for which it was reimbursed by the federal government.  We disagree.

At trial, Blue Cross's witness Al Trotter testified as follows regarding the collection

of sales tax from the federal government:

[Direct Examination by Blue Cross]

Q.      And when you submitted those cost reports to the federal government, did you—did you add anything to the cost that was being presented to the government above and beyond the—sort of the price that you had under these contracts?  Did you add anything where you were charging tax or collecting tax—

A.      No.

Q.      —from the federal government?

A.      No.

Q.      Okay.  So just to use a very simple example, if I go to a coffee shop and I buy a cup of coffee, typically, the receipt or the invoice or whatever it is would add tax on top of the purchase price, right?

A.      That's correct.

Q.      So it would be a dollar for the coffee and, you know, seven or eight cents for the tax, right?

A.      Yes.

Q.      Did that same thing happen with your—your cost reports and your reimbursement from the federal government?

A.      No.

Q.      So did Blue Cross ever state on any of its cost reports to the federal government that the stated price that was being represented to the government included sales or use tax?

24

A. No.

Q. Was there a rate line item on any of those cost reports for sales or use tax?

A. No.

Q. I want to show you just a couple of sentences from one of the Comptroller's rules, Comptroller Rule 3.286, Subpart D3. I've highlighted what I want to ask you about. What this says is—and it's talking about collection of tax. If you—if you go up and look at the beginning of this, the beginning of D, this is a rule where they tell you how to collect tax, collection. So under D3 in rule 3.286, it says, "The amount of the sales tax must be separately stated on the bill, contract, or invoice to the customer or there must be a written statement to the customer that the stated price includes sales and use tax." Now, did Blue Cross do either of those two things?

A. No.

Q. So there was never any separate statement to the customer, the federal government, or any amount of tax?

A. No.

Q. Was there ever a written statement to the customer that the stated price included sales or use tax?

A. No.

. . . .

[Cross-examination by the Comptroller]

Q. . . . . And I believe it was your testimony that—that Blue Cross did not separately identify the taxes that it paid on these various purchases on invoices to the federal government; is that correct?

A. That is correct.

Q. Did Blue Cross pass those costs on through—the expense of those taxes on through to the federal government?

A. Did they pass them on through?

25

Q. Yes. Were they charged to the federal government under the contracts?

A. What was charged to the federal government would be all allowable costs related to tangible personal property.

Q. And were the taxes charged through to the federal government?

A. Well, the taxes were an allowable cost, but no, they were not charged through.

Q. You didn't—you didn't charge the taxes through to the federal government?

A. We didn't pass taxes through to the federal government. Taxes were an allowable cost and we were reimbursed for allowable costs.

Q. Okay.

A. Yes.

Q. Okay. The government reimbursed you for the taxes; is that correct?

A. Not in all cases, no.

. . . .

Q. Okay. Well, if you went out and bought a computer to use for the performance of these contracts, would that be an allowable cost that you could pass through to the federal government?

A. Yes, it would be.

Q. Okay. And if you paid sales tax on the purchase of the computer, would you try to recover the—that sales tax expenses from the federal government, along with the costs of the computer?

A. Yes.

. . . .

[Redirect Examination by Blue Cross]

26

Q. Mr. Trotter. Let me ask you a few follow-up questions. Let me actually start on the last thing he asked about—

A. Yes.

Q. —which was the tax reimbursement.

A. Yes.

Q. Now, would you explain to the Court the difference between collecting tax, like we talked about earlier, and having a reimbursement of tax?

A. Tax that we would charge and collect would be calculated and assessed on the sales price for the property that we would be selling to the federal government. So if I—so, for example, if I had a computer that cost $100 and sold it to them, I would actually charge the government $108.25. And then that's—and on the invoice, it would say, computer $100, tax $8.25, and they'd pay me $108.25. I would take that $8.25 and I would remit it to the Comptroller as collected sales tax.

Reimbursement of cost basically says that—that in setting whatever the price of the—of the computer is, the government will determine that price based on what your allowable costs are. It might include installation, might include shipping, might include sales tax. But the actual accounting records and transactions do not differentiate between sales tax. You look at our ledger, you look at our cost report, you look at anything that is submitted to the federal government for reimbursement, and sales tax is not an item. They want to know how much you paid for whatever it is that you purchased that you're trying to resell. And so that is a—that is a reimbursement of cost, but it is not a charge of sales tax.

Q. So just so we're very clear, you are saying there was no collection of tax from the federal government?

A. None.

And at the subsequent hearing on the issue of double recovery, the Comptroller cross-examined

Trotter again regarding the collection of sales taxes and he testified as follows:

27

[T]here are no documents that we have produced that identif[y] the amount that represents sales tax when coming up to the amount that the federal government paid us. My contention all along has been that the federal government did not pay us for sales tax. They paid us for the goods and services under the contract. I am contending that we have not been reimbursed for sales tax. . . . My contention is that we were not reimbursed for tax. We were paid for the goods and the services that we sold to the government.

The Comptroller presented no controverting evidence showing that Blue Cross had collected sales tax from the federal government. Instead, she insists that to meet its burden of proof, Blue Cross was required to present evidence of each individual purchase or resale at issue demonstrating, transaction-by-transaction, that it did not collect tax from the federal government. We find nothing in section 111.104(f) that imposes such a burden on Blue Cross. Section 111.104(f) merely provides that "a person who has *collected* the taxes from another person" is not entitled to a refund unless that person refunds those *collected* taxes. *See* Tex. Tax Code Ann. § 111.104(f) (emphasis added). Here, the undisputed and uncontradicted evidence in the record is that Blue Cross never collected sales tax from the federal government. We overrule the Comptroller's third issue.

**Plea to the jurisdiction**

In its fourth and final issue, the Comptroller challenges the district court's denial of its plea to the jurisdiction. The Comptroller argues that the district court lacked jurisdiction over two refund claims that Blue Cross allegedly raised for the first time in a trial brief to the district court. Those two "claims" involve sales-tax exemptions for purchases of taxable services that were performed on property owned by the federal government. *See* Tex. Tax Code Ann. §§ 151.309(1) (exemption for taxable item sold to the federal government), .3111(a) (exemption for

28

services performed on certain exempt tangible personal property). The Comptroller argues that because Blue Cross's motion for rehearing specifically referenced only the tax code's sale-for-resale exemption as the basis for its sales-tax refund claim, the district court lacked jurisdiction over any other claims based on other tax code exemptions.

We review de novo the district court's denial of a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law. *Id.*

"[I]n order to maintain an action against the Comptroller for a refund of taxes, a party must meet the procedural requirements of the tax protest law. Compliance with these procedures is a jurisdictional prerequisite for the trial court to hear and decide the merits of a tax refund suit." *Central Power & Light Co. v. Sharp*, 919 S.W.2d 485, 491 (Tex. App.—Austin 1996, writ denied) (citations omitted). As the Comptroller asserts, one such procedural requirement provides that "[t]he grounds of error contained in the motion for rehearing are the only issues that may be raised in a suit" seeking a refund of taxes paid. Tex. Tax Code Ann. § 112.152 (West 2008).

In the present case, Blue Cross's motion for rehearing asserted that Blue Cross "purchased and paid Texas sales and use tax on Taxable Items that were resold to [the federal government] . . . . includ[ing] . . . tangible personal property and taxable services . . . . [that] were exempt from taxation as Taxable Items purchased for resale to the Government." Blue Cross also asserted that its "refund claim includes sales and use taxes paid on the purchase of Taxable Items the cost of which were [indirectly or directly] charged to [its contracts with the

29

federal government].” The Comptroller contends that this language limits the court's jurisdiction to refund claims involving the sale-for-resale exemption. We disagree.

Section 112.152 is satisfied if the motion for rehearing is sufficiently definite to identify the grounds for the refund. *See Sharp v. International Bus. Machs. Corp.*, 927 S.W.2d 790, 794 (Tex. App.—Austin 1996, writ denied); *see also Lawrence Indus., Inc. v. Sharp*, 890 S.W.2d 886, 893 (Tex. App.—Austin 1994, writ denied) (holding that language used was “sufficient to alert the Comptroller to the subject matter of the protest as required by the tax code”). In *IBM*, IBM's motion for rehearing merely asserted the amount of the claimed refund and that the Comptroller had erred by “not finding and holding that [IBM] has satisfied all conditions to entitlement to a refund requested by [IBM].” We held that was sufficiently definite to identify IBM's claim that it had overpaid the franchise tax. *Id*. In the present case, although Blue Cross specifically used the word “resale,” Blue Cross's motion does not limit its refund claim to the sale-for-resale exemption. Rather, the motion asserts that Blue Cross is seeking a refund of sales taxes paid on purchases made for and transferred to the federal government. Both of the exemptions to which the Comptroller objected in its plea to the jurisdiction apply to purchases of services sold to the federal government: section 151.309(1) creates an exemption for “taxable services sold, leased, rented to, or stored, used, or consumed by” the federal government, *see id.* § 151.309(1), and section 151.3111 creates an exemption for services performed on certain exempt tangible personal property, *see id.* § 151.3111(a). Thus, considering the tax code's broad definition of “sale,” *see id.* § 151.005, both of these exemptions fall within the refund claim asserted in Blue Cross's motion for rehearing. Accordingly, we hold that Blue Cross's motion for rehearing was sufficiently definite to

identify that its refund claim was based on sales-tax exemptions for purchases made for and resold to the federal government.[13]

## CONCLUSION

Having overruled the Comptroller's four issues on appeal, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   March 16, 2011

_____

[13]   Blue Cross's motion for rehearing also references Comptroller memoranda that, from context, appear to be two Comptroller procedures memoranda regarding FAR title-passing clauses and the supreme court's decision in *Day & Zimmermann*.  Those memoranda, which address "*Day & Zimmermann* Type Refunds" and "*Day & Zimmermann* Refund Procedures," discuss the exemptions covering services performed on government owned property that are covered by sections 151.3111 and 151.309.