**Carole Keeton RYLANDER, Successor–in–Interest to John Sharp, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Successor–in–Interest to Dan Morales, Attorney General of the State of Texas, Appellants,**

v.

**FISHER CONTROLS INTERNATIONAL, INCORPORATED, Appellee.**

**No. 03–00–00183–CV.**

Court of Appeals of Texas, Austin.

April 26, 2001.

Rehearing Overruled June 7, 2001.

■■■■

and 1992. The sales resulted from the efforts of Fisher's representatives and independent contractors who solicited sales orders in the other states—orders that Fisher approved in Texas before shipping the items from Texas to the buyers in the other states. The present litigation arose from a dispute between Fisher and the Comptroller regarding the proper franchise-tax treatment of the sums received by Fisher from these sales.

Christine Monzingo, Assistant Attorney General, Taxation Division, Austin, for Appellants.

Gilbert J. Bernal, Jr., Stahl, Martens & Bernal, L.L.P., Austin, for Appellee.

Before Justices PATTERSON, POWERS * and JONES; Justice JONES Not Participating.

JOHN E. POWERS, Justice (Retired).

Carole Keeton Rylander, Comptroller of Public Accounts, and John Cornyn, Attorney General (collectively the "Comptroller") appeal from a judgment awarded Fisher Controls International, Inc. ("Fisher") in its suit to recover franchise taxes paid under protest for the years 1992 and 1993.[1] We will affirm the judgment.

## THE CONTROVERSY

Fisher, a corporation organized and existing under the laws of Delaware, manufactured in Texas certain valves and related instruments that Fisher sold to buyers in other states during calendar years 1991

## THE FRANCHISE TAX

■ The franchise tax is imposed upon corporations for the privilege of transacting business in Texas and is said to be justified by the benefits conferred upon corporations by the state, including the opportunity to realize income and the protection afforded by Texas law. *See Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex.1979). The tax is due and payable annually.

Before January 1, 1992, a corporation's net taxable capital was the sole basis for computing the amount of franchise-tax liability. After that date and until the present, the tax has been computed by applying specified statutory rates to a corporation's annual net taxable capital *and* its annual net taxable earned surplus. *See* Tex. Tax Code Ann. §§ 171.001(a)(1), .002 (West Supp. 2001).

Net taxable capital consists of a corporation's stated capital (as defined in the Texas Business Corporation Act) and its surplus (net corporate assets less stated capital), apportioned to Texas as provided in section 171.106(a) of the Texas Tax

---

* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The judgment, rendered after a bench trial, orders that Fisher recover the sum of

$1,209,209.04 and statutory interest thereon from the date Fisher paid such sum under protest. The franchise-tax reports in dispute (1992 and 1993) are based on business done by Fisher in calendar years 1991 and 1992.

Code, from which certain allowable deductions are taken. *Id.* §§ 171.101(a), .106(a) (West 1992 & Supp. 2001).

A corporation's net taxable earned surplus consists of its reportable taxable income (for federal income-tax purposes) plus certain sums and less other amounts. The net sum, for present purposes, must be apportioned to Texas as set out in tax-code section 177.106(b) to arrive at the corporation's apportioned taxable earned surplus, from which any allowable deductions and business losses are subtracted to produce the corporation's net taxable earned surplus.[2] *Id.* § 177.106(b) (West Supp. 2001).

As indicated in the two preceding paragraphs, the tax code requires an apportionment in the case of corporations doing an interstate business, both as to a corporation's taxable capital and its net taxable earned surplus. *See, e.g., Gen. Dynamics Corp. v. Sharp,* 919 S.W.2d 861, 863–64 (Tex.App.—Austin 1996, writ denied).

The apportionment of taxable capital and taxable earned surplus is governed by section 171.106 of the tax code. With certain exceptions not material here, the apportionment results from multiplying taxable capital and taxable earned surplus by a fraction, the numerator of which is the corporation's gross receipts from business done in Texas and the denominator of which is the corporation's total gross receipts. *See* Tex. Tax Code Ann. § 171.106(a), (b) (West Supp. 2001).

The calculation of gross receipts is governed in turn by other tax-code provisions, one applicable to taxable capital and another applicable to taxable earned surplus. Because these two tax-code provisions lie at the heart of the present controversy, we will set them out at length.

### *Taxable Capital*

Sec. 171.103. Determination of Gross Receipts from Business Done in This State for Taxable Capital

In apportioning taxable capital, the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state regardless of the FOB point or other condition of the sale, and each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is *not subject to taxation;*

(2) each service performed in this state;

(3) each rental of property situated in this state;

(4) the use of a patent, copyright, trademark, or license in this state;

(5) each sale of real property located in this state, including royalties from oil, gas, or other mineral interests; and

(6) other business done in this state.

*Id.* § 171.103 (West Supp. 2001) (emphasis added).

Pursuant to the foregoing, the comptroller promulgated Rule 3.546, which provides as follows:

Rule 3.546. Taxable Capital: Nexus.

(a) A foreign corporation is liable for the franchise tax if it is authorized to do business in this state or if it is actually doing business in this state.

---

2. Our descriptions of the various tax-code provisions are mere summaries of the statutes in question. The actual tax-code provisions are more complex. The descriptions suffice, however, for present purposes.

(b) A corporation is doing business in this state, for the taxable capital component of the franchise tax, when it has sufficient contact with this state to be taxed without violating the United States Constitution. A corporation may be subject to the taxable capital component, but not subject to the earned surplus component, because of Public Law 86–272. *See* § 3.554 of this title (relating to Earned Surplus: Nexus) for the nexus standards for the earned surplus component of the franchise tax.

34 Tex. Admin.Code § 3.546 (2000). The rule sets forth, following the above, numerous actions that constitute "doing business" in Texas, including "having employees, independent contractors, agents, or other representatives in Texas . . . to promote or induce sales of [a] foreign corporation's goods or services." *Id.* § 3.546(c)(4).

After section 171.103 became effective in 1981, the Comptroller in 1988 promulgated Rule 3.549 in which he assigned meaning to the term "not subject to taxation" as used in section 171.103(1). Rule 3.549 provides as follows:

Rule 3.549. Taxable Capital: Apportionment

(e) Treatment of specific items in computing gross receipts.

\* \* \* \*

(41) Tangible personal property. Examples of transactions involving the sale of tangible personal property and which result in Texas receipts include, but are not limited to, the following:

\* \* \* \*

(I) sales to which the throwback rule applies. For reports due on or after October 2, 1984, each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is not subject to taxation (i.e., the throwback rule). This subparagraph will control if it conflicts with any other provision of this rule. Another state means a state of the United States, the District of Columbia, Puerto Rico, or any territory or possession of the United States. *Subject to taxation means constitutional nexus. The seller need not pay tax to the other state; it only has to have enough contact with the other state that the other state could tax the seller. If the seller is doing business, has a certificate of authority, or is incorporated in the other state, the seller is subject to taxation in that state.* Voluntarily collecting or paying tax to another state, by itself, is not enough contact to make sales to the other state non-Texas receipts. *A corporation which performs any of the activities listed in Rule 3.546(c) concerning Taxable Capital: Nexus for taxation of taxable capital in the other state will be considered subject to taxation in the other state.* The selling corporation must have nexus in the other state during the accounting year upon which the tax is based. The corporation has the burden of proving it is subject to taxation in the other state. . . .

34 Tex. Admin. Code § 3.549(e)(41)(I) (2000) (emphasis added).

The effect of Rule 3.549(e)(41)(I) is to make the actions set out in Rule 3.546(c)(4) the measure of whether a corporation is doing business in a state other than Texas. It appears to be undisputed that Fisher is doing business in the other states in the requisite sense.

### Taxable Earned Surplus

The legislature in 1991, for the first time, made a corporation's earned surplus

a basis for computing the Texas franchise tax. The concomitant gross-receipts provision was added to the Tax Code as section 171.1032, to be effective January 1, 1992. The new statute provided as follows:

Sec. 171.1032. Determination of Gross Receipts From Business Done in this State for Taxable Earned Surplus

*(a) In apportioning taxable earned surplus, the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state regardless of the FOB point or another condition of the sale, and each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is *not subject to taxation;*

(2) each service performed in this state;

(3) each rental of property situated in this state;

(4) each royalty for the use of a patent or copyright in this state; and

(5) other business done in this state.

Tex. Tax Code Ann. § 171.1032 (West 1992) (emphasis added).

Section 171.1032 was itself amended in 1993 as discussed below. The pre-amendment version set forth above is, nevertheless, the law governing the 1992 and 1993 franchise-tax reports in dispute here.

While the pre-amendment version of section 171.1032 was yet in effect, the Comptroller promulgated Rule 3.554, which became effective March 16, 1992. Therein he referred implicitly to the term "not subject to taxation" as used in section 171.1032(a)(1) of the statute before its 1993 amendment:

Rule 3.554. Earned Surplus: Nexus.

(a) A foreign corporation is liable for the franchise tax if it is authorized to do business in this state or if it is actually doing business in this state.

(b) A corporation is doing business in this state, *for the earned surplus component* of the franchise tax, when it has sufficient contact with this state to be taxed without violating the United States Constitution. *A corporation may be subject to the taxable capital component, but not the earned surplus component,* because of Public Law 86–272. See Rule 3.546 concerning Taxable Capital: Nexus for the nexus standards for the taxable capital component of the franchise tax.

(c) If the only business activity within this state is the solicitation of orders for sales of tangible personal property, which orders are sent outside the state for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside this state, then the *corporation is not subject to the earned surplus component of the franchise tax.*

34 Tex. Admin. Code § 3.554(a) (1992) (emphasis added).

A few months after adopting Rule 3.544, the Comptroller adopted Rule 3.557, pertaining to the apportionment of earned surplus, to be effective November 13, 1992. The rule provided as follows:

Rule 3.557. Earned Surplus: Apportionment

(e) Treatment of specific items in computing receipts:

* * * *

(37) Tangible personal property. Examples of transactions involving the sale of tangible personal property and which result in Texas receipts

include, but are not limited to, the following:

\* \* \* \*

(I) sales to which the throwback rule applies. Each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is not subject to taxation (i.e., the throwback rule). This subparagraph will control if it conflicts with any other provision of this rule. Another state means a state of the United States, the District of Columbia, Puerto Rico, or any territory or possession of the United States. A corporation or limited liability company is subject to taxation in another state if the corporation or limited liability company is chartered or organized in that state or *has sufficient contact with that state so that a tax on net income could be imposed on the corporation or limited liability company without violating 15 United States Code, sec. 381 (i.e., Public Law 86–272).* For reports originally due before January 1, 1993, the mere holding of a certificate of authority will establish that a corporation or limited liability company was subject to taxation in another state. Sales into another state where the seller merely holds a certificate of authority will be treated as sales to which the throwback rule applies, effective for reports originally due on or after January 1, 1993. Voluntary payment of tax to another state or the inclusion of a corporation or limited liability company in another entity's state combined or consolidated income tax return does not, by itself, cause the corporation or limited liability company to be subject to taxation in another state. The selling corpora-

tion or limited liability company must be subject to taxation in the other state during the accounting year upon which the tax is based. The corporation or limited liability company has the burden of proving that it is subject to taxation in the other state (See Rule 3.554).

34 Tex. Admin. Code § 3.557 (2000).

Public Law 86–272, incorporated in Rules 3.554(a) and 3.557, prohibits a state's imposition of a tax on net income derived within the state from interstate commerce if the only business activity within the state is the solicitation of orders for tangible property by a representative of the taxpayer or an independent contractor, when the orders are sent outside the state for approval or rejection and, following approval, are filled by shipment or delivery from a point outside the state. *See* 15 U.S.C.A. § 381 (West 1997).

### *The 1993 Amendment*

Section 171.1032 was amended in 1993, to be effective January 1, 1994, so that after the amendment paragraph (a)(1) provided as follows:

[I]n apportioning taxable earned surplus, the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:

(1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state regardless of the FOB point or another condition of the sale, and each sale of tangible personal property shipped from this state to a purchaser in another state in which the seller is *not subject to any tax on, or measured by, net income, without regard to whether the tax is imposed;*

\* \* \* \*

Tex. Tax Code Ann. § 171.1032(a)(1) (West Supp.2001) (emphasis added).

The 1993 amendment left no doubt that the amended version of section 171.1032 was intended to be prospective only in its application. The amending act stated as follows: "This Act takes effect January 1, 1994, and applies to a report originally *due on or after that date.*" Act of June 8, 1993, 73d Leg., R.S. ch. 546, § 13, 1993 Tex. Gen. Laws 2043, 2045 (emphasis added). Thus, the amended version does not *govern* the 1992 and 1993 franchise-tax reports in dispute here. The Comptroller contends, however, that the 1993 amendment is proof of what the legislature intended by the term "subject to taxation" used in its *original* 1991 enactment of section 171.1032, a contention we will discuss below.

## DISCUSSION AND HOLDINGS

■ Under section 171.103(1) and section 171.1032(a)(1) as it existed before January 1, 1994, Fisher was required to include in its Texas gross receipts any amounts received from sales of tangible personal property to buyers in other states in which Fisher was *not* subject to taxation. It appears undisputed that Fisher's sales to customers in the other states, through its representatives and independent contractors, amounted to doing business in those states. Consequently, Fisher *was* subject to taxation in those states in the sense that the tax would not offend the constitution of the United States. The parties refer to this as a constitutional nexus between Fisher and the other states. *See Rylander v. Bandag Licensing Corp.,* 18 S.W.3d 296, 298–99 (Tex. App.—Austin 2000, pet. denied). Even though some of the other states have not actually imposed an income-based tax, this is immaterial in Fisher's view; those states *could* impose such a tax under the Constitution because "constitutional nexus" was the only thing sections 171.103(1) and 171.1032 contemplated. Therefore, it cannot be said that under those statutes Fisher was "not subject to taxation" in those states. Consequently, Fisher included as part of its *total* gross receipts those obtained from sales made in states that could have imposed an income-based tax but did not do so. This enlarged the denominator of the apportionment fraction and reduced the amount of Fisher's Texas franchise-tax liability.

The Comptroller, on the other hand, contends Fisher was not subject to taxation in the other states, in the words of section 171 .103(1) and section 171.1032(a)(1) as they existed before January 1, 1994, when those states could, but did not actually, impose an income-based tax. The effect of this interpretation is that Fisher was required to include in its *Texas* gross receipts amounts derived from sales in such other states. This interpretation of the statutory term "not subject to taxation" enlarges the numerator of the apportionment fraction and thus increases the amount of Fisher's franchise-tax liability.

There can be no doubt as to the meaning of the adverb "not" and the noun "taxation" as used in the statutory term "not subject to taxation." The key to understanding the meaning of the term as a whole is, therefore, the intended meaning of the words "subject to."

The Comptroller and Fisher both contend their antagonistic interpretations come within the plain meaning of the words "not subject to taxation." We believe, however, that either party's interpretation might reasonably and fairly come within the disputed language *considered in isolation.*

■ In common usage, the term "subject to" can mean to bring under dominion,

control, or authority (which tends to support Fisher's theory) *or* the term can mean to suffer a particular liability or exposure (which tends to support the Comptroller's theory). *See Webster's Third New International Dictionary* 2275 (Philip Babcock Gove, ed. 1986). We hold, accordingly, that the statutory term "not subject to taxation" is ambiguous and therefore open to construction, first by the Comptroller in the administrative process and then by the courts on judicial review.

■ In our attempt to find the intended meaning of the disputed statutory term, we are mindful that the Code Construction Act erects a presumption that a just and reasonable result was intended; and, the Act authorizes us to consider the objective sought to be obtained, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction of the disputed term. *See* Tex. Gov't Code Ann. § 311.023 (West 1998). We are forbidden to impose our own notions of public policy, such as the desirable scope of a statute, but must instead determine the legislative purpose from a consideration of the statutory scheme as a whole rather than from a literal application or interpretation of any particular statutory language. *See Citizens Bank v. First State Bank, Hearne,* 580 S.W.2d 344, 348 (Tex.1979); *Calvert v. British–Amer. Oil Producing Co.,* 397 S.W.2d 839, 842 (Tex.1965); *Sexton v. Mt. Olivet Cemetery Ass'n,* 720 S.W.2d 129, 138 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Brown v. Patterson,* 609 S.W.2d 287, 289 (Tex.Civ.App.—Dallas 1980, no writ). We are also reminded that the Comptroller's administrative interpretation of ambiguous language in a revenue statute is entitled to our respect and due weight. *See Clark v. Atl. Pipe Line Co.,* 134 S.W.2d 322, 328–29 (Tex.Civ.App.—Austin 1939, writ ref'd); *see generally*

*Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944). We are not bound, however, by the Comptroller's interpretation. *See Bullock v. Ramada Tex., Inc.,* 609 S.W.2d 537, 539 (Tex.1980); *Firestone Tire & Rubber Co. v. Bullock,* 573 S.W.2d 498, 500 n. 3 (Tex.1978); *Citizens Nat'l Bank v. Calvert,* 527 S.W.2d 175, 180 (Tex.1975).

We will first summarize the parties' respective arguments, as we understand them, relative to the meaning proper to be assigned to the term "not subject to taxation" as used in the pre 1994 version of section 171.1032(a)(1).

### The Comptroller's Arguments

In support of her position, the Comptroller argues as follows: The legislature intends, in general, that the franchise tax shall extend "to the limits of the United States Constitution and the federal law adopted" thereunder. Tex. Tax Code Ann. § 171.001(c) (West Supp.2001). From this, the Comptroller reasons that the legislature's 1991 enactment of section 171.1032, making taxable earned surplus a component of the franchise tax for the first time, had the purpose of enhancing Texas state revenue and preventing multi-state income from escaping state taxation altogether. *See Rylander v. 3 Beall Bros. 3, Inc.,* 2 S.W.3d 562, 570 (Tex.App.—Austin 1999, pet. denied); *Rylander v. B & A Mktg.,* 997 S.W.2d 326, 334 (Tex.App.—Austin 1999, no pet.).

The Comptroller concedes that Rule 3.549(e)(41)(I), pertaining to the apportionment of taxable capital, assigned to the disputed term "not subject to taxation" a meaning contrary to that which she now assigns to the same statutory term used in section 171.1032(a)(1). She points out, however, that the same statutory term is used in different statutory contexts. Section 171.1032 (pertaining to the taxable

earned-surplus component) includes an incorporation of Public Law 86–272, which limits a state's power to tax corporate income as opposed to its capital, while section 171.103 (construed in Rule 3.549(e)(41)(I) and pertaining to the taxable-capital component) does not refer at all to Public Law 86–272. Thus, it is reasonable for the Comptroller to assign different meanings to the same statutory term ("not subject to taxation") found in each of the two sections of the tax code.

In the Comptroller's view, the 1993 amendment of section 171.1032(a)(1) decided the controlling issue in the Comptroller's favor by adding the words "without regard to whether the tax is imposed" by the other state. Conceding the 1993 amendment does not actually *govern* the present case, because it was not effective until *after* Fisher's filing of the disputed franchise-tax reports for 1992 and 1993, the Comptroller argues that the 1993 amendment nevertheless proves the legislature's 1991 intent in enacting section 171.1032(a)(1) containing the disputed term "not subject to taxation": the term was intended to mean without regard to whether the tax was actually imposed by the other state. The 1993 amendment was, according to the Comptroller, merely a clarifying amendment not intended to change the law that had existed in the legislature's mind since the original 1992 enactment of section 171.1032(a)(1). At least, the Comptroller contends, the 1993 amendment is highly persuasive as to the legislature's 1991 intent. *See Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist.,* 917 S.W.2d 19, 21 (Tex.1996).

The Comptroller argues finally that Rule 3.557, promulgated November 13, 1992, to include Public Law 86–272 as a factor in judging whether corporate income is not subject to taxation in the other state, is an administrative construction of the statutory term that is entitled to great weight in our own attempt to ascertain the legislative intent that produced that ambiguous term. *See Stanford v. Butler,* 181 S.W.2d at 274.

### Fisher's Arguments

Fisher contends the Comptroller's interpretation attempts to give retroactive force and effect to the 1993 amendment of section 171.1032(a)(1), which gave statutory sanction to the Comptroller's interpretation but declared explicitly and concurrently that the amendment would apply only "to a [franchise-tax] report originally due on or after" January 1, 1994.

Fisher next points out that the Comptroller's Rule 3.549, although strictly applicable to the taxable-capital component alone, stated expressly that the term "subject to taxation" meant constitutional nexus and that actual payment of an income-based tax was unnecessary. This administrative interpretation of the term "subject to taxation" was presumably in the legislature's mind when it employed the identical expression in its first enactment of section 171.1032, to be effective January 1, 1992; and, by utilizing the very same words "subject to taxation," as adopted by the Comptroller in reference to taxable capital, the other component of the franchise-tax calculation, the legislature must have intended the same words to have the same meaning throughout the franchise-tax calculation.

Referring to the Comptroller's Rule 3.554, dealing specifically with taxable earned surplus, effective November 13, 1992, Fisher argues that the rule contemplates only that a corporation may or may not be subject to actual taxation in another state, measured by income, according to whether the corporation "has sufficient contact with the state to be taxed without violating the United States Constitution,"

as stated in subsection (b) of the rule. And subsection (c) of the rule provides only that "the corporation is not subject to the *earned surplus component* of the franchise tax" if the corporation's only business activity in the other state "is the solicitation of orders for sales of tangible personal property, which orders are sent outside the state for approval or rejection, and if approved are filled by shipment or delivery from a point outside" the state. 34 Tex. Admin. Code § 3.554(c) (emphasis added). In Fisher's view, this is not a qualification or limitation of the constitutional nexus mentioned in subsection (b) but rather a restriction against application of the *earned-surplus component alone if such nexus exists.* Subsection (c) does not mean, therefore, that the corporation is not subject to *any* income-based tax in the circumstances described. *That* question must be determined according to subsection (b)—the constitutional-nexus requirement.

We believe the most important consideration, if not an overriding consideration, is the legislature's 1993 enactment of section 171.1032(a)(1). This amendment added, in the most explicit language, the very qualification for which the Comptroller now contends, stating expressly that it is immaterial whether an income-based tax is actually imposed by the other state. Accompanying that declaration, the legislature also stated in no uncertain terms that its 1993 amendment "takes effect January 1, 1994, and applies to [franchise-tax] reports originally due on or after that date." This implies in the strongest possible terms that the 1993 amendment may *not* be applied retroactively to the franchise-tax reports in dispute in the present litigation—Fisher's 1992 and 1993 reports. It is equally clear that the Comptroller's position and supporting arguments *require* that we apply retroactively to Fisher's 1992 and 1993 reports the full force and effect of the 1993 amendment on a theory that the law laid down therein had *always* been the meaning of section 171.1032(a)(1). If such *had* always been the law, then the legislature's limiting the amendment to reports due after January 1, 1994, would be meaningless in our view. That theory flies in the face of the legislature's express prohibition as well as the ordinary presumption against a retroactive application of a statute. *See* 3 Singer, *Sutherland Statutory Construction* § 66.08, at 17 (6th ed. 2000). Concerning the Comptroller's argument that the 1993 amendment merely clarified what the legislature intended in its original enactment of section 171.1032(a)(1), then Fisher's 1992 and 1993 reports would necessarily have been *subject to* and *not expressly excepted* from the clarification made in 1993. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 681 (Tex.1979); *Am. Sur. Co. v. Axtell Co.,* 120 Tex. 166, 36 S.W.2d 715, 718 (1931); *Tex. Dep't of Banking v. Mt. Olivet Cemetery Ass'n,* 27 S.W.3d 276, 285 (Tex.App.—Austin 2000, pet. denied).

Moreover, the Comptroller's argument requires that we assume the legislature, in choosing the term "not subject to taxation" for use in section 171.1032(a)(1), enacted in 1991, intended that the term should have a vastly *different* meaning from that assigned by the Comptroller to the very same words in his 1988 adoption of Rule 3.549 only four years earlier. We reject that theory because we cannot impute to the legislature an intent to cause such confusion of meaning in the two *interwoven* statutes by which franchise-tax liability is computed.

Nor are we persuaded by the Comptroller's invocation of the legislature's general intent and objective that the franchise tax should extend to the limits allowed by the United States constitution and laws enacted thereunder, nor by her reliance upon

the legislature's specific intent that section 171.1032(a)(1) serve to enhance Texas state revenue. The legislature has enacted numerous statutory provisions providing for a reduced franchise-tax liability or an absolute exemption from such liability in circumstances where the federal constitution and statutes would apparently pose no barrier to a franchise tax. *See, e.g.,* Tex. Tax Code Ann. §§ 171.055 (open-end investment companies), 171.056 (corporations with business interest in solar-energy devices), 171.059 (non-profit corporations organized to provide burial places), 171.069 (marketing associations), 171.071 (farmers' cooperative societies), 171.074 (development corporations), 171.077 (credit unions), 171.085 (corporations engaged in recycling operations) (West 1992 & Supp. 2001).

■ Nor are we persuaded by the Comptroller's invocation of the rule of departmental construction laid down in *Stanford v. Butler,* 181 S.W.2d at 273. This rule of statutory construction does indeed find frequent application in cases of ambiguous statutory language, and holds that courts should give serious consideration to the contemporaneous construction placed upon the ambiguous language by an executive officer or department—the Comptroller in this instance. *See generally* 2B Singer, *Sutherland Statutory Construction* §§ 49:01–:11, at 8–128 (6th ed. 2000). This rule of construction applies particularly to an agency's construction that is sanctioned by long acquiescence, *Stanford v. Butler,* 181 S.W.2d at 273, but such is not the case here. And it appears the Comptroller's construction of the term "subject to taxation," insofar as it is said to be found in Rules 3.554 and 3.557, is itself ambiguous and uncertain as to what that construction actually is; it plainly is not as clear, certain, and direct as the legislature's 1993 amendment of section 171.1032(a)(1) containing the proviso "without regard to

whether the tax is imposed." The Comptroller argues only that this very proviso is *implied* by the rules mentioned, but the Comptroller fails to point to any part of the rules that naturally or logically gives rise to the implication claimed. Interpretation by implication is permitted only to supply *obvious* intent not expressly stated, and never to contradict or add to a statute. *See Commonwealth of Mass. v. United N. & S. Dev. Co.,* 140 Tex. 417, 168 S.W.2d 226, 229 (1942); *Sexton v. Mt. Olivet Cemetery Ass'n,* 720 S.W.2d at 138.

■ Finally, the task of statutory construction does not here involve a matter lying within agency expertise. It involves instead a non-technical question of law—legislative intent—determined from the legislature's use of the term "not subject to taxation" in context and based on the ordinary meaning of those words. Courts are as competent as the Comptroller in making that assessment of legislative intent. This reduces considerably the degree of judicial deference owed the Comptroller's interpretation. "Courts do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." 2B Singer, *Sutherland Statutory Construction* § 49.04, at 23–24.

For the reasons given, we affirm the trial-court judgment.