# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00072-CV

**Chris Traylor, Commissioner, Texas Department of Aging and Disability Services; The Texas Department of Aging and Disability Services; Thomas Suehs, Executive Commissioner of The Texas Health and Human Services Commission; and Texas Health and Human Services Commission, Appellants**

**v.**

**Oakview Healthcare Residence, Ltd., d/b/a Oakview Healthcare Residence, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-10-002298, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Aging and Disability Services (DADS); Chris Traylor, Commissioner of DADS; the Texas Health and Human Services Commission (HHSC); and Thomas Suehs, Executive Commissioner of HHSC (jointly the State) challenge the district court's judgment reversing a final order of DADS following Oakview Healthcare Residence's administrative appeal of an administrative enforcement action. The order upheld changes made by HHSC, through its Office of Inspector General, Utilization Review Division (OIG), to certain assessments of Medicare recipients made by Oakview, a long term care facility, resulting in reduced Medicaid reimbursements to Oakview. The State appeals the district court's reversal of the DADS order and denial of its plea to the jurisdiction. For the reasons that follow, we affirm in part and reverse and dismiss in part.

**FACTUAL AND REGULATORY BACKGROUND**

Oakview is a licensed nursing facility that provides reimbursable Medicaid services under a contract with DADS. *See* Tex. Health & Safety Code Ann. § 242.031 (West 2010); Tex. Hum. Res. Code Ann. § 161.071(6) (West Supp. 2012); 40 Tex. Admin. Code §§ 46.1–.71 (Dep't of Aging and Disability Servs., Contracting to Provide Assisted Living and Residential Care Servs.) (West 2012).[1] Oakview is required to perform assessments of the clinical condition and functional performance of Medicaid recipients and the level of services provided to each. Prior to October 3, 2008, the applicable assessment system was the Case Mix Classification System, which consisted of eleven Texas Index for Level of Effort (TILE) classifications. *See* former 1 Tex. Admin. Code §§ 371.212–.214 (West 2008) (Texas Health & Hum. Servs. Comm'n, Case Mix Classification Sys., Utilization Review and Control Activities Performed by Texas Heath and Human Services Commission (Commission), Texas Index for Level of Effort (TILE) Assessments) *repealed* 33 Tex. Reg. 8311 (2008) (proposed July 4, 2008).[2] The TILE assessment scores determined the amount of Medicaid reimbursement; the greater the level of effort required by the nursing facility, the lower the score and the higher the reimbursement. Oakview was required to record the assessments on Client Assessment Review and Evaluation (CARE) forms, submit them electronically, and maintain copies. *See id.* § 371.212(7).

---

[1] Except where material substantive changes have been made, we cite the current versions of the relevant statutory provisions and agency rules for convenience.

[2] Unless otherwise stated, the repealed rules are cited as former 1 Tex. Admin. Code §§ 371.212–.214. All citations to title 1, chapter 371 of the Texas Administrative Code are to repealed or current rules issued by the Texas Health and Human Services Commission.

HHSC, through OIG, periodically conducts on-site utilization reviews and investigations of fraud and abuse in nursing facilities that receive Medicaid funds. *Id.* §§ 371.213(a), .214(c)(1); Tex. Gov't Code Ann. § 531.102 (West 2012).[3]  Under the repealed TILE rules, during the on-site visits, the facility was required to provide hard copies of the previously-submitted CARE forms.  Former 1 Tex. Admin. Code §§ 371.212 (7)(B), .213(b).  CARE forms that could not be located were considered invalid assessments.  *Id.* § 371.212(7)(B).  The first time the forms could not be located, the lack of compliance was factored into the nursing facility's "error rate."  *Id.*  The error rate determined the frequency of on-site visits, which could occur at intervals of between seven and sixteen months.  *Id.* § 371.214(d).  Subsequent failures to locate CARE forms could result in a default score of the highest TILE assessment (212) and therefore a reduced Medicaid reimbursement.  *See id.* § 371.212(6)(L), (7)(B).

On February 22, 2008, OIG conducted a routine on-site visit to Oakview, at which time certain CARE forms were not provided.  On October 9, 2008, the Case Mix Classification System rules were repealed and replaced with rules adopting the Resource Utilization Group Classification System (RUG).  *See* current 1 Tex. Admin. Code §§ 371.212, .214 (West 2012) (Minimum Data Set Assessments, Res. Utilization Group Classification Sys.).  The RUG rules do not require the use of CARE forms and do not contain a provision for assignment of a default high score for failure to provide records during on-site visits.  *See id.*  On February 3, 2009, OIG

---

[3]    *See also* 1 Tex. Admin. Code §§ 371.214(n) (West 2012) (Minimum Data Set Assessments, Resource Utilization Group Classification Sys.) (current version of rule regarding utilizations reviews).  The current rules that replaced the repealed rules are cited as current 1 Tex. Admin. Code §§ 371.212 and 371.214.

conducted another on-site visit to Oakview, at which time Oakview did not provide CARE forms for certain recipients. OIG assigned a default score of 212 for each of those recipients, which resulted in reduced reimbursement to Oakview.

## PROCEDURAL BACKGROUND

Oakview sought informal reconsideration of OIG's determination and provided the missing CARE forms, but no changes were made to the TILE scores. *See* former 1 Tex. Admin. Code § 371.214(c)(3). The Decision Rationale states that the CARE forms were submitted for reconsideration with all of the required signatures, but "since the form is no longer effective, the default TILE 212 value is upheld." Oakview contested the findings and submitted a request for a formal appeal to HHSC. *See id.* § 371.214(c)(4); 1 Tex. Admin. Code §§ 357.481(a) (West 2012) (Texas Health & Hum. Servs. Comm'n, Application of this Subchapter) (hearings under subchapter conducted in accordance with Texas Administrative Procedure Act (APA), Chapter 2001 of Texas Government Code), .484 (West 2012) (Texas Health & Hum. Servs. Comm'n, Request for Hearing).[4] HHSC transferred the case to the State Office of Administrative Hearings (SOAH) and requested that SOAH docket the case, naming DADS as the referring agency. *See* 1 Tex. Admin. Code §§ 155.53 (West 2012) (State Office of Admin. Hearings, Request to Docket Case);[5] 357.482 (West 2012) (Definitions) (defining "referring agency" as "the HHSC agency taking the action and that issues the notice of adverse action, or the state agency that otherwise refers the matter to the

---

[4] All cites to title 1, chapter 357 of the Texas Administrative Code are to rules issued by the Texas Health and Human Services Commission.

[5] All cites to title 1, chapter 155 of the Texas Administrative Code are to rules issued by the State Office of Administrative Hearings.

HHSC Appeals Division for a hearing"), .484(d) (Request for Hearing) (upon receipt of request for hearing HHSC will transfer case to SOAH).[6]

DADS sent a notice of hearing, and the case was docketed at SOAH with DADS and Oakview as the parties. *See* Tex. Gov't Code Ann. § 2001.051, .052 (West 2008); 1 Tex. Admin. Code § 155.401 (West 2012) (Notice of Hearing); 1 Tex. Admin. Code § 357.489 (Notice of Hearing). The parties filed cross-motions for summary disposition. *See* 1 Tex. Admin. Code §§ 155.505 (West 2012) (Summary Disposition); 357.496 (West 2012) (Summary disposition). The central issue was whether the repealed TILE rules applied to the enforcement action against Oakview. On partially stipulated facts, two administrative law judges (ALJs) assigned to the case issued a proposal for decision (PFD) recommending that DADS's motion for summary disposition be denied and Oakview's be granted. *See* Tex. Gov't Code Ann. § 2001.062 (West 2008); 1 Tex. Admin. Code §§ 155.507 (West 2012) (Proposal for Decision); 357.497(a) (West 2012) (Proposals for Decision, Exceptions, and Replies). The PFD contained a conclusion of law that the legislative intent to delete the TILE rules was clear and the general savings provision of the Texas Code Construction Act did not operate to preserve the application to the TILE rules after their repeal. *See* Tex. Gov't Code Ann. § 331.031 (West 2005) (Savings Provisions).

DADS filed exceptions to the PFD, and Oakview filed a response. *See* 1 Tex. Admin. Code § 357.497(b). The ALJs declined to revise the PFD. DADS subsequently issued an order adopting the ALJs' findings and conclusions except for the conclusions concerning the general

---

[6] HHSC is the umbrella agency over four other health and human services agencies, including DADS. *See* Tex. Gov't Code Ann. §§ 531.001(1-a)(4), .0055 (West 2012).

savings provision and the rulings on the motions. In the order, DADS revised the conclusions to read that the general saving provision operated to preserve the application of the TILE rules and that Oakview's motion for summary disposition should be denied. The order then denied Oakview's motion, deleted the conclusion that DADS's motion should be denied, and remanded the case to SOAH "for a proposal on [DADS's] Motion for Summary Disposition or for a hearing on the merits." On remand, the ALJs issued a revised PFD, stating that "[b]ased on [DADS's] Order in this docket, the ALJs find that the TILE values [assigned by OIG] must be applied." DADS subsequently issued an order adopting the findings, conclusions, and recommendations contained in the revised PFD. *See* Tex. Gov't Code Ann. § 2001.141 (West 2008). Oakview filed a timely motion for rehearing. *See id.* § 2001.145, .146 (West 2008). In response, DADS deleted one objected-to paragraph and otherwise denied the motion for rehearing, and the modified order became final. *See id.* §§ 2001.144 (West 2008).

Oakview appealed to the district court, naming as defendants DADS, its commissioner, HHSC, and its commissioner. In its petition, Oakview sought reversal of the order, relief under the Uniform Declaratory Judgments Act (UDJA), and fees and expenses under a motion for a frivolous claim by a state agency. *See id.* § 2001.171 (West 2008); Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004–.011 (West 2008), 105.001–.004 (West 2011) (Frivolous Claim by State Agency). The state defendants jointly filed a plea to the jurisdiction contending that HHSC was not a proper party to an appeal of a DADS order and that the district court lacked jurisdiction over all

6

of Oakview's claims other than reversal of the DADS order. The district court denied the plea to the jurisdiction, reversed the DADS order, and denied all other relief sought by Oakview. This appeal followed.

## DISCUSSION

**Standard of Review**

Generally, the APA provides for review of an agency decision under a substantial evidence standard, and a court may not substitute its judgment for the agency's judgment on the weight of the evidence on a question committed to agency discretion. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008); *City of El Paso v. Pub. Util. Comm'n*, 344 S.W.3d 609, 618 (Tex. App.—Austin 2011, no pet.). Here, however, the challenge to the order turns on the construction of a statute, which is a question of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *City of El Paso*, 344 S.W.3d at 618. Of primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). Although we must give "serious consideration" to the construction of a statute by the administrative agency charged with its enforcement, *see Railroad Comm'n of Tex.*, 336 S.W.3d at 624, we do not defer to an administrative interpretation regarding questions that do not lie within the agency's expertise or that deal with a nontechnical question of law, *see Rylander v. Fisher Controls*

7

*Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Singer, *Sutherland Statutory Construction* § 49.04, at 23–23 (6th ed. 2000)). Courts are as competent as agencies in construing statutory language. *See id.*

The State's plea to the jurisdiction challenges the district court's authority to decide this case, *see Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012), and also raises a question of law that we review de novo, *see Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). When, as here, a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

To make this determination, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Westbrook*, 231 S.W.3d at 405; *Miranda*, 133 S.W.3d at 226. When the pleadings do not allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate an incurable jurisdictional defect, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227. In determining a plea to the jurisdiction, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

Sovereign immunity from suit bars actions against the state absent a legislative waiver, deprives a court of subject matter jurisdiction, and is therefore properly asserted in a plea to the jurisdiction. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund,*, 212 S.W.3d 320, 323–24 (Tex. 2006); *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W3d at 224. The APA provides a limited waiver of sovereign immunity from suit for appeal of an agency decision to district court. *See* Tex. Gov't Code Ann. § 2001.171. "For a suit to proceed against a governmental unit under a statute [that waives immunity], the court must first look to the terms of the Act to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope.'" *Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700,704 (Tex. App.—Austin 2004, no pet.) (quoting *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)) (ellipsis in original). Although the UDJA waives immunity for declaratory judgment actions challenging the validity of statutes, it is not a general waiver of immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008); *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). It does not enlarge a trial court's jurisdiction, and a request for declaratory relief does not alter the underlying nature of a suit. *Heinrich*, 284 S.W.3d at 370; *IT-Davy*, 74 S.W.3d at 855.

**The General Savings Clause**

In its first issue, the State contends that the district court erred in reversing the DADS order because the general savings provision of the Texas Code Construction Act preserved the application of the TILE rules after their repeal. The general common law rule is that when a statute

9

is repealed without a savings clause limiting the effect of the repeal, the repeal is given immediate effect. *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1999). Here the parties agree that there was no express savings clause in the repealing legislation but join issue on whether the general savings provision applies. The savings provision, which modified the general common law rule, provides:

> (a) Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:
>
> > (1) the prior operation of the statute or any prior action taken under it;
> >
> > (2) any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;
> >
> > (3) any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal; or
> >
> > (4) any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

Tex. Gov't Code Ann. § 311.031.[7] The supreme court has held that there is a presumption that the general savings provision applies "unless a contrary legislative intent is shown by clear expression or necessary implication" in the repealing legislation. *Quick*, 7 S.W.3d at 130.

Oakview contends that the language of the preambles to the proposed and adopted RUG rules that replaced the repealed TILE rules are a clear expression of intent that the general savings provision does not apply and that the repealed TILE rules cannot be applied in an

---

[7] The Code Construction Act applies to agency rules as well as statutes. *See* Tex. Gov't Code Ann. § 311.002(4) (West 2005) (application of code construction act).

10

enforcement action after their repeal. The preamble to the proposed rules explained the proposed repeal of the existing rules and adoption of new rules under the same numbers and stated that the agency was "moving from the TILE classification system to the RUG classification system" and that the proposed repeal of the TILE rules "deletes existing requirements governing a nursing facility's use of the TILE case mix classification system and assessments." *See* 33 Tex. Reg. 5131 (2008), *adopted* 33 Tex. Reg. 8311 (2008) (codified at 1 Tex. Admin. Code §§ 371.212, .214). The preamble to the adopted rules stated that the proposed rules were adopted without changes and that the new sections replaced the old sections. *See* 33 Tex. Reg. 8311. The State argues that this language does not add anything to the fact that the TILE rules were repealed and replaced by the RUG rules and does not constitute a clear statement of intent that the general savings provision should not apply. In the absence of a clear expression that the general savings provision should not apply, the State contends that, under *Quick*, it does apply. We agree. The repealing language does not expressly negate the application of the general savings provision, and we therefore find no legislative intent that the general savings provision does not apply to the repealed TILE rules. *See Quick*, 7 S.W.3d at 130 (repealing legislation, which contained narrow savings clause, did not expressly negate application of general savings provision, and both specific and general savings clauses were needed to effectuate legislative intent).

We turn, then, to whether the general savings provision operates to preserve the application of the TILE rules in the enforcement action against Oakview. The State argues that subsections (a)(2) and (a)(4) of the savings provision save the enforcement under the TILE rules. Subsection (a)(2) provides that the repeal of a statute does not affect rights accrued or obligations

incurred prior to the repeal. Tex. Gov't Code Ann. § 311.031(a)(2). The State contends that Oakview incurred the obligation to maintain the CARE forms under the TILE rules prior to their repeal and therefore had to provide the forms in the on-site visit conducted after their repeal. *See* former 1 Tex. Admin. Code §§ 371.212(7), .213(b). The State further contends that OIG acquired the right to review the TILE assessments at the time they were conducted and electronic forms filed, which was prior to the repeal. These obligations and rights, the State argues, therefore survive the repeal of the TILE rules.

However, Oakview's obligation was to "maintain" the records and provide documentation to reviewers as necessary to conduct reviews under TILE. *See* former 1 Tex. Admin. Code § 371.213(b). On-site reviews *under TILE* ceased upon repeal of the TILE rules. *See* current 1 Tex. Admin. Code 371.214(n) (outlining procedures for utilizations reviews under RUG rules). Thus, although Oakview did have an obligation to "maintain" the CARE forms under the old rules, *see* former 1 Tex. Admin. Code § 371.212(7), there was no current obligation to maintain them *at the time of the review* because that rule had been repealed and replaced, *see* 33 Tex. Reg. 8311.[8] Nor did the State accrue a right of review and assessment prior to the repeal of the TILE rules; the State's right under the TILE rules was to view the CARE forms at the time of the on-site visit, which did not occur until after the repeal and replacement of the rules governing on-site visits. Therefore, we do not defer to the State's construction of subsection (a)(2) here, *see Rylander*, 45 S.W.3d at 302,

---

[8] In addition, we observe that there is no provision in the RUG rules for a default high score for failure to produce the required forms during on-site visits. *See* current 1 Tex. Admin. Code §§ 371.212, .214.

12

and conclude that subsection (a)(2) of the savings provision does not save the enforcement action under the TILE rules.

The State also contends that subsection (a)(4) preserves the TILE rules here. Subsection (a)(4) provides that investigations and proceedings are not affected by the repeal of a statute. Tex. Gov't Code Ann. § 311.031(a)(4). The State characterizes the visit to Oakview by OIG on February 3, 2009, as a "follow-up" visit and part of an ongoing investigation that was begun at the time of the visit conducted on February 22, 2008, before the repeal of the TILE rules. However, there is no evidence in the record that HHSC or OIG opened any "investigation" or that the on-site visit on February 3, 2009, was part of any "proceeding." Rather, the visits appear from the record to have been conducted in accordance with the provisions of both the TILE and RUG rules regarding frequency of reviews. *See* former 1 Tex. Admin. Code § 371.214(d)(1) (frequency of reviews determined by error rate history); current 1 Tex. Admin. Code § 371.214(n)(1) (same). The State argues that the reference to Oakview's failure to provide the forms at the first visit contained in the Reconsideration Review Report following the second visit indicates the two visits were somehow connected. We disagree. The reference to the prior violation was required under the TILE rules to justify the imposition of the default score of 212, which could be applied only on subsequent violations. *See* former 1 Tex. Admin. Code § 371.212(7)(B). We therefore conclude that subsection (a)(4) of the savings provision does not save the enforcement action under the TILE rules. *See Rylander*, 45 S.W.3d at 302. We overrule the State's first issue.

**DADS's Authority to Issue Final Order**

In its second issue, the State argues that DADS was within its authority to issue the final order following the contested case hearing. In addition to seeking reversal of the DADS order, Oakview sought declarations under the UDJA that DADS exceeded its authority in interpreting HHSC rules, modifying the ALJs' PFD, and issuing the final decision in the matter. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004. However, in its judgment, the district court denied the relief Oakview sought under the UDJA, and Oakview does not appeal that ruling.[9] Therefore, we need not reach this issue. *See* Tex. R. Civ. P. 47.1.

**Substantial Evidence**

In its third issue, the State contends that there was substantial evidence to support DADS's final order adopting the revised PFD's finding that Oakview did not provide the CARE forms during the on-site visit of February 3, 2009, and upholding the resulting default TILE scores assigned by OIG. The APA authorizes a reviewing court to test an agency's findings and conclusions to determine if they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174; *see City of El Paso*, 344 S.W.3d at 618. Here, however, Oakview did not challenge the findings of fact under the substantial evidence standard before SOAH or the district court and does not do so on appeal. There is no dispute that Oakview did not provide the CARE forms on February 3, 2009. The only issue below and on appeal regarding the appropriateness of the order is whether the general savings

---

[9] We do not construe the judgment as ambiguous, as the State contends it is, and conclude that on its face, it reversed the DADS order and denied all other relief sought.

14

provision operated to preserve the application of the TILE rules in the enforcement action. Such construction of a statute is a question of law, which we review do novo. *See Railroad Comm'n* , 336 S.W.3d at 624; *First Am. Title Ins. Co.*, 258 S.W.3d at 631; *City of El Paso*, 344 S.W.3d at 618 (applying de novo standard of review to construction of statute in appeal under APA of utility commission's order). Further, this argument presumes the application of the TILE rules, an issue we have already decided in favor of Oakview. Consequently, we need not reach this issue.[10] *See* Tex. R. Civ. P. 47.1.

**Issue Four**

### *HHSC as a party*

The State raises several arguments in its fourth issue. First, it argues that HHSC and Suehs are protected by sovereign immunity and are not proper parties to this action, matters raised in the State's plea to the jurisdiction, which the district court denied. Oakview points to the following as reasons that HHSC and Suehs are proper parties: (1) HHSC promulgated the rules at issue, *see* Tex. Hum. Res. Code Ann. § 161.073 (West Supp. 2012); (2) Oakview's appeal was to the HHSC Appeals Division, *see* 1 Tex. Admin. Code Ann. § 357.484(b); (3) the case was given an HHSC cause number, and the number was retained but changed to reflect it was a DADS cause number; (4) HHSC is responsible for review and investigation of nursing homes that receive Medicaid funds and conducted the on-site visits to Oakview through its OIG, *see* Tex. Gov't Code Ann. § 531.102; former 1 Tex. Admin. Code §§ 371.213(a), .214(c); and (5) the preamble to the

---

[10] The State notes that it briefed this issue out of "an abundance of caution."

15

proposed rules stated that it is HHSC that recovers incorrect Medicaid payments and reimburses underpayment to the nursing facility, *see* 33 Tex. Reg. 5131.

We do not find these reasons persuasive. It is true that HHSC and DADS are related agencies and that HHSC promulgated the rules that governed the enforcement proceeding and participated in it. *See* Tex. Gov't Code Ann. §§ 531.001(1-a)(4), .0055(e) (West 2012); Tex. Hum. Res. Code Ann. § 161.073; former 1 Tex. Admin. Code §§ 371.213(a), .214(c). However, it is also apparent that DADS was the only agency that was a party to the SOAH proceeding and was the agency that issued the final order at issue here. As a state entity, HHSC is protected by sovereign immunity unless it is expressly waived by statute. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist*, 212 S.W.3d at 323–24; *Sykes*, 136 S.W.3d at 638. "[C]ourts are required to narrowly construe statutory waivers of sovereign immunity." *TJFA, L.P. v. Texas Comm'n on Envtl. Quality & BFI Waste Sys. of N. Am.*, 368 S.W.3d 727, 737 (Tex. App.—Austin 2012, pet. denied) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008)). It is settled that for a statute to waive immunity, it must contain a clear and unambiguous expression of the legislature's intent to do so. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). When a statute does not contain "'magic words,' such as the State's 'sovereign immunity to suit and liability is waived[,]'" the supreme court has employed certain "aids to help guide our analysis." *Id.* at 697. One guideline is that, although the statute need not be a "model of 'perfect clarity,'" it must waive immunity "beyond doubt." *Id.* For example, if the provision in question would be meaningless unless immunity were waived, a court may find waiver. *See id.* Another is that "when construing

16

a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity."[11] *Id.*

The APA provides a limited waiver of sovereign immunity from suit by providing for appeal of an agency decision to district court. *See* Tex. Gov't Code Ann. § 2001.171. The APA contemplates judicial review of an "agency decision" and refers to "agency action," "agency discretion," and service of the petition on "a state agency" or "the state agency." *See id.* §§ 2001.172.–176 (West 2008). Although the statute does not expressly state that "immunity is waived," the right of judicial review and the provisions for service on "a state agency" would be meaningless if immunity were not waived as to the agency whose decision is being appealed. *See Wichita Falls State Hosp.*, 106 S.W.3d at 697. However, there is nothing in the plain language of the APA that expressly extends that waiver of immunity beyond the agency whose order is at issue to related agencies, and we need not read in such an extension in order to give the statute meaning. *See Pochucha*, 290 S.W.3d at 867; *Wichita Falls State Hosp.*, 106 S.W.3d at 697. Although the references to "the" or "a" state agency and its "decision," "action," or "discretion" could be construed as ambiguous in light of HHSC's oversight of DADS, its coordination with DADS on enforcement, and its role in issuing rules for the operation of DADS, we must resolve that ambiguity in favor of immunity. *See Wichita Falls State Hosp.*, 106 S.W.3d at 697.[12]

---

[11] Other guidelines cited by the supreme court in *Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 698 (Tex. 2003), do not apply to the facts before us.

[12] The UDJA also provides a limited waiver of immunity for claims challenging the validity of a statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008). In addition, the APA provides that "the state agency" must be made a party to a declaratory judgment action challenging the validity or applicability of a rule. *See* Tex. Gov't Code § 2001.038(a)(c) (West 2008). However, even assuming Oakview's claims can be construed as a challenge to the validity or applicability of

As for the immunity of Suehs, we observe that public employees generally are protected by official immunity from suits arising out of the performance of their discretionary duties performed in good faith and within the scope of their authority. *See Franka v. Velasquez*, 332 S.W.2d 367, 383 (Tex. 2011). "It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (citing *Kentucky v. Graham*, 473 U.S. 159, 165, (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))) (brackets in original). One exception is an ultra vires claim, an action alleging that the official acted without legal authority or failed to perform a purely ministerial act. *See Franka*, 332 S.W.3d at 382; *Heinrich*, 284 S.W.3d at 372. Here, Oakview has not alleged an ultra vires claim against Suehs. Consequently, Oakview's claims against Suehs are claims against HHSC and are likewise barred by sovereign immunity. *See Koseoglu*, 233 S.W.3d at 844; *Wichita Falls State Hosp.*, 106 S.W.3d at 697. We therefore conclude that the district lacked subject matter jurisdiction over Oakview's claims against HHSC and Suehs and sustain the State's fourth issue as to HHSC's and Suehs's immunity from suit.

### *Alternate bases for judgment*

Observing that the district court did not state the reasons for its ruling, the State also challenges several arguments made by Oakview "to the extent the trial court's decision in this case may have been based on" those claims. First, it contends that the district court erred to the extent

_____

the TILE rules, Oakview's claims for declaratory relief were directed at DADS, not HHSC, and these provisions can not waive immunity for HHSC on the record before us.

18

it reversed the DADS order based on an unexpressed finding that in modifying the ALJs' first PFD, DADS violated section 2001.058(e) of the APA, which outlines when an agency may change an ALJ's finding of fact or conclusion of law. *See* Tex. Gov't Code Ann. § 2001.058(e) (West 2008). Oakview's claim that DADS wrongly modified the first PFD was asserted in its request for declaratory relief, which the trial court denied and which Oakview does not appeal. We need not address this issue again.[13] *See* Tex. R. Civ. P. 47.1.

The State also argues that DADS's final order and its letter denying Oakview's motion for rehearing cannot provide a basis for the district court's reversal of the DADS order and that the district court erred to the extent it relied on either in its decision to reverse the order. However, it is clear from the record that DADS's first order modifying the first PFD and remanding the case to SOAH and its letter denying rehearing were not final and appealable orders of the agency, were not what Oakview appealed, and were not what the district court considered. We need not reach these arguments. *See id.*

Finally, the State challenges the district court's authority to reverse the DADS order under the UDJA and chapter 105 of the civil practices and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004–.011, 105.001–.004. Because the district court denied the relief Oakview sought under the UDJA and chapter 105,[14] it is clear from the record that the district court did not base its reversal of the order on these claims. Further, Oakview does not appeal the denial of its UDJA and chapter 105 claims. We need not reach this point. *See id.* Therefore, we sustain

---

[13] *See supra* note 7.

[14] *See supra* note 7.

19

the State's fourth issue as to HHSC's and Suehs's sovereign immunity without reaching the remainder of the State's arguments on this issue.

## CONCLUSION

Having concluded that the district court lacks jurisdiction to hear Oakview's claims against HHSC and Suehs, we reverse the district court's denial of the State's plea to the jurisdiction as to the sovereign immunity of HHSC and Suehs and dismiss the action as to them for lack of subject matter jurisdiction. We affirm the district court's judgment in all other respects.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed in part; Reversed and Dismissed in part

Filed: March 8, 2013