# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00511-CV

**Southwest Royalties, Inc., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas; and
Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-09-004284, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Southwest Royalties, Inc. (Southwest), filed a refund claim with the Comptroller of Public Accounts of the State of Texas (Comptroller) for taxes that it paid from January 1, 1997, through April 30, 2001. *See* Tex. Tax Code § 111.104 (setting out requirements for tax-refund claim). The requested refund was for taxes paid on the purchase of equipment as well as services pertaining to the equipment that Southwest used in the extraction or mining (cumulatively extraction) of oil and natural gas. When it filed its claim, Southwest alleged that the equipment and services were exempt from taxation. *See id.* § 151.318 (containing manufacturing exemption), .3111 (exempting certain services applied to exempt property).

After convening a hearing, the Comptroller denied Southwest's request. Subsequent to the Comptroller's ruling, Southwest filed suit against the Comptroller and against the Attorney General of the State of Texas. *See id.* § 112.151 (authorizing suit for tax refund). In the trial,

Southwest again urged that it qualified for a tax exemption.  At the end of the trial, the district court concluded that Southwest failed to meet its burden of proving that it qualified for an exemption and that the Comptroller's determination that Southwest was not entitled to a refund was "reasonable" and did "not contradict the plain language" of the relevant provisions of the Tax Code.

Southwest appeals the judgment of the district court.  We will affirm.

### STATUTORY FRAMEWORK

Under the Tax Code, the legislature applies sales and use taxes (collectively sales tax) to the "sale of a taxable item in this state" and for "the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use, or other consumption in this state."  Tex. Tax Code §§ 151.051, .101.  The sales tax requirement is subject to various exemptions, including the manufacturing exemption located in section 151.318 of the Tax Code.  *See id.* § 151.318.  That provision is entitled "Property Used in Manufacturing" and provides a list of items "exempted from" sales tax "if sold, leased, or rented to, or stored, used, or consumed by a manufacturer."  *Id.* § 151.318(a).

When Southwest sought a tax refund, it asserted that it was entitled to an exemption under three subsections of the manufacturing exemption.  Those provisions exempt the following property from taxation:

> (2) tangible personal property directly used or consumed in or during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary or essential to the manufacturing, processing, or fabrication operation and directly makes or causes a chemical or physical change to:

2

(A) the product being manufactured, processed, or fabricated for ultimate sale; or

(B) any intermediate or preliminary product that will become an ingredient or component part of the product being manufactured, processed, or fabricated for ultimate sale[1];

. . .

(5) tangible personal property used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to a pollution control process; [and]

. . .

(10) tangible personal property used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to comply with federal, state, or local laws or rules that establish requirements related to public health.[2]

*Id.* § 151.318(a)(2), (5), (10).

---

[1] As mentioned above, Southwest is seeking a tax exemption for equipment and services purchased from January 1, 1997, through April 30, 2001. In its briefs, Southwest notes that prior to October 1, 1997, subsection (a)(2) of the manufacturing exemption did not expressly require a "direct" cause or change. *See* Act of May 27, 1997, 75th Leg., R.S., ch. 1390, § 1, sec. 151.318(a), 1997 Tex. Gen. Laws 5195, 5196 (adding direct requirement) (current version at Tex. Tax Code § 151.318(a)). Accordingly, Southwest insists that even if this Court were to determine that Southwest was not entitled to an exemption because the equipment at issue did not directly cause a change, Southwest would still be entitled to an exemption for the equipment that it purchased prior to the effective date of the statutory amendment. For that reason, Southwest alternatively asks this Court to render a judgment in its favor regarding the equipment purchased prior to the effective date. However, given our ultimate resolution of the issues on appeal, Southwest is not entitled to the alternative relief that it seeks.

[2] The public-health exemption was promulgated by the legislature in 1999, *see* Act of May 31, 1999, 76th Leg., R.S., ch. 1467, § 2.18, sec. 151.318(a)(10), 1999 Tex. Gen. Laws 4996, 5018 (adding public-health exemption) (current version at Tex. Tax Code § 151.318(a)(10)), but the Comptroller's rules allowed that type of exemption before the provision was enacted by the legislature, *see* 15 Tex. Reg. 6600 (1990) (current version at 34 Tex. Admin. Code § 3.300(d)(11) (2014) (Tex. Comptroller of Pub. Accounts, Manufacturing; Custom Manufacturing; Fabrication; Processing)).

In addition to the exemptions described above, section 151.3111 exempts from taxation "a service that is performed on tangible personal property that, if sold, leased, or rented, at the time of the performance of the service, would be exempted under this chapter because of the nature of the property, its use, or a combination of its nature and use, is exempted from this chapter." *Id.* § 151.3111(a).

As outlined above, the statutory provisions at issue in this appeal govern exemptions from taxation. *Id.* §§ 151.318(a)(2), (5), (10), .3111(a). Statutory exemptions are strictly construed because they undermine both uniformity and equality of taxation by imposing a heavier burden on some taxpayers instead of imposing the burden equally on all taxpayers. *Laredo Coca-Cola Bottling Co. v. Combs*, 317 S.W.3d 735, 739 (Tex. App.—Austin 2010, pet. denied); *see also Sabine Mining Co. v. Combs*, No. 13-06-00330-CV, 2007 Tex. App. LEXIS 6766, at *8-9 (Tex. App.—Corpus Christi Aug. 23, 2007, no pet.) (mem. op.) (deciding that section 151.318 should be interpreted "very narrowly" and noting that when courts elected to provide broad reading of section 151.318, legislature amended statute to overrule broad ruling). For that same reason, "the burden of proof for showing that the exemption applies is on the claimant." *Laredo Coca-Cola Bottling Co.*, 317 S.W.3d at 739; *see also* Tex. Tax Code § 151.318(r) (specifying that taxpayer has burden of proof); 34 Tex. Admin Code § 1.40(2)(A) (Tex. Comptroller of Pub. Accounts, Burden of Proof) (establishing that taxpayer has burden of establishing by "clear and convincing evidence" that transaction is tax exempt). "The exemption must affirmatively appear in the statutory language, and all doubts are resolved in favor of the taxing authority and against the claimant." *Laredo Coca-Cola Bottling Co.*, 317 S.W.3d at 739.

## STANDARD OF REVIEW

Resolution of the issues on appeal depends upon statutory construction, which is a question that is generally reviewed de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When construing statutes, a court's primary objective is to give effect to the legislature's intent. *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). In ascertaining the legislature's intent, we rely on the plain meaning of the words in the statute unless the plain meaning would lead to an absurd result or unless a different meaning is apparent, *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010), and we look to the entire act and not just to "isolated portions," *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). Moreover, we presume that the statutory language was chosen purposefully and deliberately, *First State Bank*, 325 S.W.3d at 635, and we should not interpret a statute "in a manner that renders any part of the statute meaningless or superfluous," *Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

If "a statute's words are unambiguous and yield but one interpretation," we give "such statutes their plain meaning without resort to rules of construction or extrinsic aids." *Combs v. Roark Amusement & Vending, L.P.,* 422 S.W.3d 632, 635 (Tex. 2013). However, if the statute is ambiguous or vague, courts defer to the interpretation provided by an agency unless that interpretation is inconsistent with the plain language of the statute or plainly erroneous. *Id.*; *see First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008) (explaining that because legislature has charged Comptroller with task of setting tax policy and regulating collection of taxes, courts give serious consideration to Comptroller's construction of tax statute and will uphold her interpretation provided that it is reasonable "and does not contradict the plain language of the statute" (quoting

*Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993))); *see also* Tex. Tax Code §§ 111.001-.002 (charging Comptroller with responsibility of collecting taxes and empowering Comptroller to adopt rules enforcing provisions of Tax Code). Stated differently, courts defer to an agency's interpretation of a statute if "there is vagueness, ambiguity, or room for policy determinations in a statute." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *see also Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 433 (Tex. 2011) (stating that courts may consider administrative construction of statute even if statute is not ambiguous).[3]

---

[3] For reasons more thoroughly explained in the body of the opinion, we believe that consideration of the Comptroller's construction is warranted in this case. On appeal, Southwest urges, for various reasons, that no deference should be afforded to the Comptroller's construction of the relevant statutes. First, Southwest notes that refund lawsuits are tried de novo. *See* Tex. Tax Code § 112.154; *see also* Tex. Gov't Code § 2001.173(a) (explaining that if agency decision is reviewed by trial de novo, trial court proceeds as if there had been no agency decision). Second, Southwest alleges that the Comptroller does not have a long-standing policy of denying the exemptions at issue; on the contrary, Southwest insists that the Comptroller has historically not distinguished manufacturing claims from extraction claims. *See Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 170 (Tex. App.—Austin 1997, no pet.) (explaining that "greater deference" is given to agency interpretations that are "long-standing and applied uniformly"). As primary support for this proposition, Southwest refers to decisions made by the Comptroller decades ago. *See, e.g.*, Tex. Comptroller of Pub. Accounts, Hearing No. 24,833 (Apr. 9, 1990) (noting that tax scheme did "not require a determination of mining process versus manufacturing process"); Tex. Comptroller of Pub. Accounts, Hearing No. 23,055 (Aug. 17, 1988) (stating that if "Tax Division wishes to remove all mining activities from manufacturing, processing, and fabrication, a duly promulgated rule should be proposed"). Finally, Southwest argues that deference to the Comptroller's interpretation is not warranted in this case because the Comptroller "has no expertise in petroleum engineering" and, therefore, has no specialized knowledge regarding whether the property and services at issue satisfy the terms of the exemption. *See Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (noting that courts do not defer to agency interpretations regarding questions not lying within agency expertise or concerning nontechnical questions of law).

For the reasons that follow, we disagree with Southwest. Although Southwest correctly points out that trials occurring after a ruling by the Comptroller are de novo, *see Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011), consideration of agency interpretations is a permissible tool used by courts when conducting a de novo analysis in order to ascertain the legislature's intent, *see*

6

**DISCUSSION**

In two issues on appeal, Southwest challenges the judgment of the district court. In particular, Southwest insists that the district court erred by failing to find that any of the tax exemptions summarized above applied in this case. As discussed previously, Southwest sought those exemptions for equipment and services that it used for extracting natural gas and oil from the ground. In particular, Southwest sought exemptions for "casing, tubing, pumps, and related parts"

---

*Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see also* Tex. Gov't Code § 311.023(6) (authorizing consideration of "administrative construction of the statute"). In addition, even though we agree with Southwest's general statement that more deference is afforded to agency interpretations that are long-standing, we cannot agree with its suggestion that the Comptroller's seemingly inconsistent past rulings prohibit this Court from giving any consideration to the Comptroller's current construction. Although some of her prior rulings may seemingly contradict her current interpretation, the Comptroller has also repeatedly concluded that oil and gas extraction does not constitute manufacturing. *See, e.g.*, Tex. Comptroller of Pub. Accounts, Hearing No. 103,299 (Feb. 11, 2011) (concluding that bringing "oil to the surface of the earth is not processing, fabrication, or manufacturing"); Tex. Comptroller of Pub. Accounts, Hearing No. 43,807 (Oct. 20, 2009) (same); *cf. Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 863-64 (1984) (explaining that agency's construction of statute may change over time because agency is required to assess wisdom of its interpretation continuously).

Moreover, the Comptroller is charged with overseeing and enforcing the tax statutes at issue and with deciding which transactions are subject to taxation and which ones are exempt from taxation. *See* Tex. Tax Code §§ 111.001-.002. In light of this responsibility, we also cannot agree with Southwest's suggestion that the issue presented in this case is squarely outside the expertise of the Comptroller. Although it may well be true that the Comptroller does not have any specialized knowledge regarding petroleum engineering, she certainly has expertise in categorizing and comparing transactions for tax purposes. Moreover, when considering whether deference should be afforded due to an agency's expertise, the question is whether the issue presents considerations that courts are as qualified to consider as an agency, *see Fisher Controls*, 45 S.W.3d at 302 (stating that for non-technical question of law, courts are "as competent as the Comptroller" in ascertaining legislative intent), and not, as suggested by Southwest, whether a different agency might have a better understanding of the issue than the agency being asked to make a determination. Given the complexity of the governing statutory scheme and given the highly technical nature of the activity at issue, we believe that the Comptroller's taxing expertise particularly warrants serious consideration of her interpretation of the governing statutes in this case.

as well as for services pertaining to that equipment.[4]  When it sought the exemptions, Southwest generally urged that the equipment and services qualified for the exemptions "because the equipment was used in or during the actual processing of product to extract and separate the mixture into its components of oil, gas, and water, and is necessary and essential to that process."

In its second issue on appeal, Southwest contends that the district court erred by failing to conclude that the exemption located in subsection 151.318(a)(2) applied in this case. Specifically, Southwest urges that the exemption applies because the process caused a direct physical change to the petroleum products.  *See Sabine Mining Co.*, 2007 Tex. App. LEXIS 6766, at *11 (explaining that term "direct" in context of exemption "implies a close link with no intervening causes").  When arguing that the exemption applies, Southwest notes that the district court concluded that the process caused a physical change to the petroleum products but contends that the district court erred by concluding that the process was only an indirect cause of the changes.  As support for this proposition, Southwest argues that the equipment at issue "is an integral unit that directly *generates* and controls the pressure and temperature differentials, directly causing the physical changes in the oil and gas."  In addition, Southwest summarizes the evidence that it presented during trial showing that the equipment directly caused a physical change.

In its first issue, Southwest contends that the district court erred because the evidence produced during the trial conclusively proved that public-health and pollution-control exemptions found in subsections 151.318(a)(5) and 151.318(a)(10) applied.  In fact, Southwest argues that the

_____

[4] Although the original request with the Comptroller involved additional equipment and services, the appellate briefs by the parties and the findings of fact and conclusions of law by the district court only pertain to the specific equipment and services discussed above.

evidence showed that "most of the equipment at issue was necessary and essential to a pollution control process and to comply with public health regulations." As support for this proposition, Southwest summarizes the evidence that it presented regarding the public-health and pollution-control exemptions and argues that the equipment was necessary to comply with pollution requirements mandated by the Texas Railroad Commission. Moreover, although Southwest seems to acknowledge that both the pollution-control and public-health exemptions contemplate some kind of product change, Southwest contends that these exemptions, unlike the exemption found in subsection 151.318(a)(2), do not require a showing that equipment directly causes a physical or chemical change to a product. *Compare* Tex. Tax Code § 151.318(a)(5), (10), *with id.* § 151.318(a)(2). Accordingly, Southwest asserts that the changes that occurred to the oil and gas during the extraction in this case suffice to invoke the pollution-control and public-health exemptions.

Although each of the three exemptions described above contains unique elements, all three also require that the property at issue be "used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale." *See id.* § 151.318(a)(2), (5), (10).[5] On appeal, the Comptroller contends that the equipment and services at issue in this case

---

[5] When arguing that the manufacturing exemption can apply to equipment and services used for oil and gas extraction, Southwest notes that after this appeal was filed, a bill was introduced seeking to amend the manufacturing exemption by adding a subsection stating that the extraction of oil and natural gas does not constitute manufacturing, processing, or fabrication under the exemption. *See* Tex. H.B. 3113, 83d Leg., R.S. (2013). Moreover, the proposed amendment stated that it was simply a clarification of existing law. *Id.* When discussing the importance of this amendment, Southwest contends that the amendment "is a death blow to the Comptroller's position" because "there would be no need to amend" the statute if it already supported her position. Assuming for the sake of argument that the addition of the amendment could be given the meaning suggested by Southwest if it became law, the proposed amendment was not passed.

used for extracting oil and gas can never qualify for the exemptions because the equipment and services are not used in "manufacturing, processing, or fabrication"; on the other hand, Southwest contends that equipment and services used for the extraction of oil and gas can qualify for the exemption provided that all of the elements are proven.

As a preliminary matter, we note that it is not readily apparent from the wording of the manufacturing exemption that the phrase "manufacturing, processing, or fabrication" includes the extraction of oil and gas, but the plain meaning of the words in the statute as well as clarifications provided by the legislature tend to support a conclusion that extraction is not included. In the manufacturing exemption, the legislature has specified that the term "'manufacturing' includes each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) that it has when transferred by the manufacturer to another." *Id.* § 151.318(d). Based on that provision, the extraction of oil and gas from the ground would not seem to qualify as manufacturing. *See id.* That determination is consistent with the legislature's decision to distinguish the term manufacturing from both mining and extraction in other contexts, *see id.* § 171.1012 (explaining that for franchise taxes term "'Production' includes . . . manufacture, . . . mining, [and] extraction"), and with the common definitions for manufacturing and mining, *see Merriam-Webster Dictionary* (defining mining as "[e]xcavation of materials from the Earth's crust, including those of organic origin, such as coal and petroleum"), *available at* http://www.merriam-webster.com/dictionary/mining (last visited Aug. 11, 2014); *id.* (explaining that term manufacture refers to "something made from raw materials by hand or by machinery"),

*available at* http://www.merriam-webster.com/dictionary/manufacture (last visited Aug. 11, 2014);

*Black's Law Dictionary* 1085 (9th ed. 2009) (defining mining as "[t]he process of extracting

ore or minerals" and "encompasses oil and gas drilling"); *id.* at 1050 (explaining that manufacture

means "[a] thing that is made or built by a human being . . . as distinguished from something

that is a product of nature"). *See also* North American Industry Classification System

(placing oil and gas extraction in different classification than manufacturing), *available at*

https://www.census.gov/cgi-bin/sssd/naics/naicsrch?chart=2012 (last visited Aug. 11, 2014); Tex.

Tax Code § 313.024(e)(1) (setting out what qualifies as manufacturing by referencing codes

from North American Industry Classification System).

In light of the lack of clarity highlighted above, we turn to the Comptroller's

interpretation of the manufacturing exemption. The Comptroller urges that the legislature did not

intend for the manufacturing exemption to apply to the extraction of oil and gas. As support, the

Comptroller points to her rule interpreting the manufacturing exemption, which provides that "[t]he

first production stage means the first act of production, and it shall not include those acts in

preparation for production." 34 Tex. Admin. Code § 3.300(a)(9) (2014) (Tex. Comptroller of Pub.

Accounts, Manufacturing; Custom Manufacturing; Fabrication; Processing).[6] Accordingly, the

---

[6] The entire definition reads as follows:

> Each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property. The first production stage means the first act of production, and it shall not include those acts in preparation for production. For example, a lumber company that cuts trees or a manufacturer that gathers, arranges, or sorts raw materials or inventory is preparing for production. The first production stage for the manufacturing of software is the

Comptroller contends that extraction is more akin to an act "in preparation for production" than manufacturing. *Cf. Houston Wire & Cable Co. v. Combs*, No. 03-07-00006-CV, 2008 Tex. App. LEXIS 1820, at *15 (Tex. App.—Austin March 12, 2008, pet. denied) (mem. op.) (concluding that cutting and re-spooling cable did not constitute processing because company did not create new product or change intrinsic character of products).

Furthermore, although the Comptroller notes that the relevant provisions of the Tax Code do not define the terms "processing" or "fabrication," she also points out that those terms have been defined by rule as respectively meaning "[t]he physical application of the materials and labor necessary to modify or to change the characteristics of personal property" and "[t]o make, build, create, produce, or assemble components of tangible personal property, or to make tangible personal property work in a new or different manner." 34 Tex. Admin. Code § 3.300(a)(5), (10) (2014). In addition, the Comptroller has specified through a rule that "[p]rocessing and fabrication are two activities that are performed during manufacturing. For example, the person who takes raw steel and makes pipe is engaged in fabrication. The workers who coat or thread the pipe are engaged in processing." *Id.* § 3.300(a)(9)(B); *see also Combs v. Chapal Zenray, Inc.*, 357 S.W.3d 751, 759 (Tex. App.—Austin 2011, pet. denied) (explaining that terms manufacturing, processing, and

---

design and writing of the code or program, and manufacturing includes the testing or demonstration of the software. Manufacturing includes the repair or rebuilding of tangible personal property that the manufacturer owns for the purpose of being sold, but does not include the repair or rebuilding of property that belongs to another.

34 Tex. Admin. Code § 3.300(a)(9) (2014).

fabricating all refer to "a joining of components into a finished product"). Accordingly, the Comptroller contends that the equipment and services used by Southwest for extraction purposes cannot fall under either of those definitions.

In addition, the Comptroller points out that in the manufacturing exemption the legislature chose to specifically include certain activities that might not fall under the common meaning of manufacturing, processing, or fabrication. *See* Tex. Tax Code § 151.318(n), (o), (t) (incorporating, respectively, "repairing jet turbine aircraft engines and their component parts" and producing news publications as well as "pre-press machinery, equipment, and supplies . . . necessary and essential to and used in connection with the printing process"). In light of these inclusions, the Comptroller urges that the legislature's decision to not specifically incorporate oil and gas extraction, which also does not fall within the common meaning of manufacturing, should be viewed as purposeful.

More importantly, the Comptroller contends that reading the manufacturing exemption as including equipment and services used in the extraction of oil and gas would render superfluous other provisions of the Tax Code dealing with extraction. Specifically, the Comptroller refers to sections 151.324 and 151.317 of the Tax Code.[7] Section 151.324 is entitled "Equipment Used Elsewhere for Mineral Exploration or Production" and exempts, among other things, "drill pipe, case, tubing, and other pipe used" as well as "tangible personal property exclusively used . . . for the exploration for or production of oil, gas, sulphur, or other minerals not in this state." *Id.* § 151.324(a).

---

[7] In its judgment, the district court concluded that the Comptroller's determination that Southwest was not entitled to an exemption "is reasonable and does not contradict the plain language of the statute, particularly in light of other provisions in the tax code that would be rendered meaningless, i.e. Tex. Tax Code §§ 151.317 and 151.324." That determination was repeated in the district court's conclusions of law, which were issued after the court reached its decision.

Section 151.317 exempts the sale of gas and electricity used for specified purposes. *Id.* § 151.317. Of relevance to this case, two subsections exempt gas and electricity sold for use in powering equipment exempt under the manufacturing exemption and used "in lighting, cooling, and heating in the manufacturing area during the actual manufacturing or processing of tangible personal property," and another subsection exempts gas and electricity used "directly in exploring for, producing, or transporting, a material extracted from the earth." *Id.* § 151.317(a)(2)-(4). In light of these provisions, the Comptroller contends that if Southwest were correct that equipment and services related to extraction qualified under the manufacturing exemption, there would be no need to have the exemptions summarized above located in sections 151.324 and 151.317. In addition, the Comptroller urges that the legislature's decision to include an exemption for extraction but to limit it to extraction performed out of State demonstrates the legislature's intent to not exempt those activities inside the State.[8]

---

[8] In its reply brief, Southwest engages in a piecemeal attack on the various bases relied on by the Comptroller by asserting that each basis does not completely align with the Comptroller's construction. For example, Southwest contends that although the common definitions for "manufacturing" and "mining" might show that the terms "are not *always* linked," they do not demonstrate that the two could never be linked. In other words, Southwest contends that if in the process of extracting oil and gas, its activities qualify under the definition of manufacturing, processing, or fabrication promulgated by the Comptroller, *see* 34 Tex. Admin. Code § 3.300(a)(5), (9), (10) (2014), then the exemption should apply, *see* Tex. Tax Code § 151.318(a). Next, Southwest urges that the legislature's decision to include within the manufacturing exemption activities that would not typically fall within the common meaning for manufacturing should not be used as support for the idea that the legislature intended to exclude extraction from the exemption. In essence, Southwest contends that unlike the other non-manufacturing enterprises, extraction can, in certain circumstances, fall under the manufacturing exemption and, therefore, needs no specific inclusion. Finally, although Southwest concedes that under its construction there may be some overlap or redundancy between the current version of the manufacturing exemption and other provisions of the Tax Code, it asserts that construing the manufacturing exemption as applying to the equipment and services at issue in this case would not, as argued by the Comptroller, render

As mentioned above, the boundaries intended by the legislature regarding what qualifies as property or services used during "actual manufacturing, processing, or fabrication" are not clear from the language of the manufacturing exemption. *See id.* § 151.318. This ambiguity alone might suffice to defeat Southwest's claims due to the strict construction that tax exemptions are given, to the fact that all doubts regarding the applicability of an exemption are resolved in favor of taxation, and to the fact that the right to an exemption must be clearly apparent from the language of the statute. *See Laredo Coca-Cola Bottling Co.*, 317 S.W.3d at 739. However, Southwest faces the additional hurdle requiring courts to defer to an agency's interpretation of an ambiguous statute unless that interpretation is plainly erroneous or inconsistent with the language of the statute. *See Roark Amusement*, 422 S.W.3d at 635. The Comptroller's interpretation is not plainly erroneous or inconsistent with the language of the statute. Accordingly, even though Southwest's interpretation might not be an unreasonable one, we cannot conclude that the district court erred when it determined that the equipment and services at issue did not qualify for the manufacturing exemptions

---

sections 151.317 and 151.324 of the Tax Code superfluous. *Cf. In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001) (noting that "only reasonable explanations" for redundancies regarding exceptions from disclosure under Public Information Act was "that the Legislature repeated itself out of an abundance of caution, for emphasis, or both").

When attacking the Comptroller's construction, Southwest correctly points out that the interpretive tools that she used to discern the legislature's intent do not mandate her interpretation; however, that same criticism could unquestionably be lodged against the resolution offered by Southwest as well. In fact, using tools of statutory construction to ascertain legislative intent will often involve the resolution of competing directives, and the technicalities identified by Southwest reinforce the benefit that reviewing courts obtain through consideration of an agency's interpretation of a statute that it is charged with enforcing. And the fact remains that the Comptroller's interpretation resulted from the implementation of several tools of construction, which, even with their faults, are among the most effective means for gaining insight into the legislature's intent.

15

under subsections 151.318(a)(2), (5), or (10). For these reasons, we overrule Southwest's two issues on appeal.

## CONCLUSION

Having overruled Southwest's two issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 13, 2014

16